Margaret Ann BEESON, Mother of Amanda Beeson, a Minor *v.* ARKANSAS DEPARTMENT OF HUMAN SERVICES

CA 91-102                                             823 S.W.2d 912

Court of Appeals of Arkansas
Division I
Opinion delivered January 22, 1992

*Robert J. Gladwin*, for appellant.

*Ron McLaughlin*, for appellee.

JAMES R. COOPER, Judge. The appellant in this chancery case is the mother of Amanda Beeson, a minor. On May 30, 1989, the Washington County Probate Court entered an order declaring Amanda to be dependent-neglected and placed custody of Amanda in the appellee. On June 27, 1990, the appellee petitioned the Washington County Chancery Court to terminate the appellant's parental rights and to grant the appellee the power to consent to Amanda's adoption. After a hearing, the chancellor entered an order on January 24, 1991, terminating the appellant's parental rights and appointing the appellee as custodian with the power to consent to Amanda's adoption without notice to or consent of the appellant. From that decision, comes this appeal.

For reversal, the appellant contends that the chancellor's decision to terminate the appellant's parental rights was not supported by the evidence. We find no error, and we affirm.

Arkansas Code Annotated § 9-27-341(b)(1) (Supp. 1991) provides:

> (b)   The court may consider a petition to terminate parental rights if it finds that the Department of Human Services has physical or legal custody of the juvenile and an appropriate placement plan for the juvenile. An order forever terminating parental rights shall be based upon a finding by clear and convincing evidence of one (1) or more of the following grounds:
>
> (1)   That a juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the home for one (1) year and despite a meaningful effort by the Department of Human Services to rehabilitate the home and correct the conditions which caused removal, those conditions have not been remedied by the parent.

The appellant's argument challenges two of the statutory requirements. Her first contention, which is relevant to the meaningful nature of the Department's efforts to rehabilitate the home and correct the conditions causing Amanda's removal, is that the rehabilitative case plan developed by the Department was unreasonable and unworkable. The appellant's second contention is that the Department failed to prove that she had not remedied the conditions which caused Amanda's removal, or that she was unfit to care for Amanda.

Grounds for termination of parental rights must be proven by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b) (Supp. 1991). When the burden of proving a disputed fact in chancery is by "clear and convincing" evidence, the question we must answer on appeal is whether the chancellor's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Freeman* v. *Freeman*, 20 Ark. App. 12, 722 S.W.2d 877 (1987); Ark. R. Civ. P. 52(a). In resolving this question we must give due regard to the opportunity of the trial court to judge the credibility of the witnesses. *Freeman, supra.*

LaReine Williams-Beach, a family service worker employed by the Department of Human Services, testified that she was Amanda's case worker. She stated that Amanda came into the Department's custody on May 23, 1989, and was adjudicated dependent and neglected. Ms. Williams-Beach further stated that Amanda came into placement because of a report of failure to provide medical treatment for Amanda by her family. She stated that both the parents were unemployed at the time of the adjudication, and that Amanda's mother, the appellant, was diagnosed as paranoid schizophrenic and was not able to take care of Amanda because of her mental condition. Ms. Williams-Beach also testified that Amanda has a feeding disorder which requires her caregivers to obtain special training to learn to feed Amanda through gastrostomy, and that Amanda requires physical, occupational, speech, and habilitative therapies, some of which must be performed by specialists.

With regard to the Department's rehabilitative case plan, Ms. Williams-Beach testified that the appellant was required to maintain suitable housing and employment, to obtain a psychological evaluation and counselling, and to deal with Amanda's

specific medical needs. According to Ms. Williams-Beach's testimony, the appellant has not complied with the plan. With respect to the requirement that the appellant maintain suitable housing and employment, she testified that the appellant lives with her grandparents in an apartment that is in disarray. Ms. Williams-Beach testified that the appellant was told that she would either have to move from her residence or clean it because it was not suitable, but that the appellant had failed to do so. With respect to the requirement that the appellant obtain suitable employment, Ms. Williams-Beach stated that she did not believe that the appellant was unemployable even though the appellant is on permanent disability because of her mental status and receives social security benefits. Ms. Williams-Beach stated that the appellant was referred to a rehabilitative unit for job training but that the appellant told her counselor that she did not want to work because she might have Amanda returned to her. Although she conceded that the appellant was doing everything that could be reasonably required to control her mental health, Ms. Williams-Beach stated that the appellant was required to obtain a psychological evaluation under the case plan, but had failed to do so. Finally, with regard to the requirement that the appellant provide for Amanda's specific medical needs, Ms. Williams-Beach testified that the appellant had failed to obtain the training required for her to learn to feed Amanda, and stated that she did not believe that the appellant has the ability to recognize Amanda's needs when it comes to her feeding. This opinion was based, in part, on Ms. Williams-Beach's observation that the appellant did not voluntarily initiate contact with Amanda; for example, unless a suggestion is made to her, the appellant doesn't question whether Amanda is wet. Ms. Williams-Beach testified that although the appellant has a twelfth-grade education, she quickly forgets when things are explained to her. She also stated that the appellant has not inquired about the techniques involved in feeding Amanda. Ms. Williams-Beach stated that, in her opinion, Amanda could not be safely returned to the home now because the appellant is not prepared to take care of her and her special needs.

Peggy Bonno, who at the time of the hearing had been Amanda's foster mother for nineteen months, testified concerning Amanda's special needs. She stated that Amanda has

developmental delay and a psychological eating disorder. As a result of her feeding disorder, Amanda does not associate hunger with eating or satisfaction. Therefore, it is necessary to feed Amanda orally five times a day and to place her on a feeding pump that must be monitored for eleven hours a day. Ms. Bonno stated that, without the pump, Amanda does not take enough food to survive. Finally, Ms. Bonno testified that Amanda has a very complex schedule involving feeding and therapy which varies from day to day and is ever changing. She stated that ongoing training is required to meet Amanda's special needs, and that she had obtained this training in Little Rock.

Pat Duncan stated that she was employed at the Richardson Center, a special school for children with developmental delays. She further stated that Amanda is a student in the early intervention program conducted by the Richardson Center, where she receives therapy for her developmental delay disorder. Ms. Duncan stated that the Center normally dealt with the main caretaker, and that she had had no contact with Amanda's parents, only with her foster parents. Finally, she stated that the Richardson Center would welcome the parents if they chose to come along but, to her knowledge, the appellant has never contacted the Richardson Center to request involvement with Amanda.

The appellant testified that she understood that Amanda was in foster care because she has a feeding disorder. She stated that, although Dr. Langston informed her of Amanda's feeding disorder, he did not tell her what was going to have to be done to try and take care of Amanda. She stated that she was aware of the special training she needed to care for Amanda, but that she was thrown out of the hospital in Little Rock where the training was offered. She testified that she did not try to get this training anywhere else because she did not know where to get it. Likewise, she testified that she had not obtained the required psychological evaluation because she did not know where to get it. The appellant conceded that she had not asked her caseworker where a psychological evaluation could be obtained, and that there are many things she needed to learn about taking care of Amanda. She stated that she understood that Amanda requires a feeding schedule and special formula, but that she did not know what the special formula was because she had not been with Amanda.

After reviewing this testimony and the entire record, we conclude that the chancellor did not err in terminating the appellant's parental rights. Even should we assume, without deciding, that the requirement that the appellant obtain suitable employment was unreasonable in light of the appellant's mental condition, we cannot say that the Department did not make a meaningful effort to rehabilitate the home and correct the conditions which caused Amanda's removal.

We think it clear that overriding importance must be attached to Amanda's feeding disorder which, according to the evidence, requires her caregiver to adhere to a complex and demanding feeding routine several times each day. Moreover, the disorder is of such a nature as to require active involvement and vigilance on the part of the caregiver. The record indicates that, because Amanda does not associate hunger with food, she does not cry when she is hungry, and that there is the potential for her to quietly starve to death. The record also supports a finding that the appellant cannot or will not achieve the degree of interest, involvement, and initiative required to provide for Amanda's minimum needs.

Although we recognize that the appellant's economic status makes it difficult for her to commute to Little Rock to receive the training required to operate the feeding pump and assist in the various courses of therapy Amanda requires, the record shows that she has not made the minimal effort of inquiring whether this training could be obtained at a more convenient location. Likewise, although it may be conceded that relocating her residence would be difficult for the appellant, there was evidence that housecleaning was within the appellant's capabilities, but that she failed to comply with the requirement that she do so. A similar lack of initiative with regard to the Department's requirements is displayed by the appellant's explanation that she did not obtain a psychological evaluation because she did not know where to obtain one, especially in light of her testimony that, although she regularly saw a psychological caseworker, she did not ask the caseworker how to obtain the required evaluation. Similarly, there was evidence that the appellant failed to contact the Richardson Center to request involvement in Amanda's therapy. The chancellor stated that the appellant lacked the degree of interest required to properly care

for Amanda. Although the appellant contends that merely being uninterested is insufficient to support termination of parental rights, we think that, under the particular circumstances of this case, a lack of interest which results in a failure to learn the feeding techniques and therapies required to care for Amanda is tantamount to unfitness. Under these circumstances, we hold that the chancellor did not err in finding that the Department made a meaningful effort to rehabilitate the home, and that the conditions which caused removal had not been remedied by the appellant.

Affirmed.

CRACRAFT, C.J., and DANIELSON, J., agree.