Colleen THOMPSON *v.* ARKANSAS DEPARTMENT OF HUMAN SERVICES

CA 96-636                                           954 S.W.2d 292

Court of Appeals of Arkansas
Division IV
Opinion delivered October 29, 1997

*Booth & Honeycutt, P.L.C.,* by: *J. Marvin Honeycutt,* for appellant.

*Marlene S. Moore,* for appellee.

JUDITH ROGERS, Judge. The appellant, Colleen Thompson, appeals from an order terminating her parental rights in her children J.T., R.T., D.T., and S.T. By this appeal, appellant contends that the chancellor's decision was clearly erroneous only as to her two younger children, D.T., who was born on May 26, 1987, and S.T, who was born on June 15, 1988. We find no merit in her argument and affirm.

The record reflects that the children were first removed from the custody of appellant and her husband, Charles Thompson, the children's adoptive father, in April of 1990. A full array of services was offered to the family such that reunification was achieved in August of 1992. On July 13, 1994, appellee was granted emergency custody of the children. By order of September 13, 1994, the chancellor determined that the children were dependent-neglected. This determination was based on evidence that J.T. had been physically abused and that R.T. had been sexually abused and was a sexually exploited juvenile. The chancellor found that D.T. and S.T. were dependent-neglected because appellant and Mr. Thompson were in jail awaiting trial.

In December of 1994, appellant was found guilty by a jury of raping J.T., and she was sentenced to a term of forty years in prison. The following March, she pled *nolo contendere* to the rape of R.T. and was sentenced to forty years in prison to be served concurrently with the former sentence imposed. Mr. Thompson was also convicted of raping J.T. and received a sentence of forty years in prison. His conviction was affirmed on appeal. *See Thompson v. State*, 322 Ark. 586, 910 S.W.2d 694 (1995).

On September 13, 1995, appellee filed a petition to terminate the parental rights of appellant and Mr. Thompson. By order of January 17, 1996, the chancellor granted the petition. Mr. Thompson has not joined appellant in bringing this appeal.

The chancellor's decision was based on testimony taken at a hearing held on December 18, 1995. At the hearing, J.T., then age thirteen, testified on behalf of appellee. In his testimony, he described what can only be characterized as unspeakable acts of sexual abuse perpetrated by both appellant and Mr. Thompson upon him and his eleven-year-old sister, R.T. Further elaboration is not necessary for an understanding of the issue raised on appeal. Although he denied knowledge of such acts being committed against his younger brothers, D.T. and S.T., he testified that his parents told him that "when they got old enough they would start doing what they were doing to us to them." He further testified that his younger brothers had been mistreated. He said that they were beaten, hit, and kicked, and had things thrown at them. He

also spoke of appellant selling marijuana and said that he would have to sell it if a purchaser came by when she was not at home.

Dr. Rebecca Floyd, a family physician, testified that she had treated the children since 1992. She said that they were usually dirty and dressed in clothes that were torn and tattered. She testified that their appearances at the clinic were irregular but that she had established a form of control by refusing to write the children's prescriptions for Ritalin unless they were seen by her. Dr. Floyd stated that the children had improved since they had been removed from appellant's custody in that their behavior seemed less erratic. She testified, however, that D.T. and S.T. continued to have difficulty sleeping and that they suffered from recurring nightmares. She said that both children had repeatedly expressed that they were afraid of their parents and that D.T., in particular, had fears of his parents returning to get him. Her diagnosis was that D.T. and S.T. were suffering from posttraumatic stress syndrome. She testified that it would be devastating for them to have contact with the persons responsible for causing that condition and that their only hope was for them to be placed in a more stable environment and to undergo intensive psychotherapy.

Dr. Kathlene Kralik, a clinical psychologist, became involved with the children in 1992, and she had been seeing D.T. and S.T. on a regular basis since August 1994. She said that D.T. and S.T. were victims of severe maltreatment. Her diagnosis of D.T. was that he suffered from prolonged, chronic posttraumatic stress disorder, child neglect, and physical abuse. She said that it was suspected that D.T. had been sexually abused because of certain behaviors he exhibited. She said that both children had been anxious about the hearing and feared being taken from the home of their foster mother. She related that they had clearly, repeatedly, and specifically stated that they never wanted to see their parents again, even for a final visit. In responding to a hypothetical question based on the circumstances of the case, Dr. Kralik said that the two younger children could not be safely returned to the home. She stated that the parents had a severe character disorder that could not be treated, explaining that research had shown that perpetrators of sexual offenses against minors do not respond to treatment. She said that the only solution is to keep such persons

away from children. It was her recommendation that the children have no further contact with their parents.

James Hurst, a criminal investigator with the Van Buren Police Department, described the Thompson home. He said that the house was filthy and infested with cockroaches. Clothes were strewn throughout the house, and dirty dishes were stacked all over the kitchen. He testified that the house was so nasty that he had trouble walking through it, and he felt that it was unsafe for children to live there.

Larry King, a case worker for appellee, testified that the department's involvement with the family began in October of 1989, that they were removed from the home in April of 1990 and were returned in August of 1992. He said that during that time a case plan was developed and that services were provided to the family in the forms of crisis intervention, budgeting education, homemaker services, housing assistance, and parenting classes. He testified that appellant received individual counselling, joint counselling with Mr. Thompson, and counselling with the children. Mr. King stated that the children were returned to the home in 1992 against the department's recommendation because, despite the extensive services that had been offered, they had not seen the kind of behavioral changes they felt were necessary to ensure the safety of the children.

Another case worker, Michelle Treadway, testified as to her belief that appellant's parental rights should be terminated. She said that appellant had not demonstrated the ability to protect the children from future abuse. Her opinion was also based on appellant's participation in sexual abuse and evidence that she allowed physical abuse to occur in her presence. She felt that further services would not effect rehabilitation in a timely manner for these children.

In her testimony, appellant stated that she had done none of the sexual acts spoken of by J.T., nor had she seen Mr. Thompson do any of the acts described. She said that J.T. had given her problems in the past and that the child must have been angry at her for him to say those things. She admitted that she smoked marijuana to calm her nerves and to relieve pain from back surgery

but said that she did not sell it. As for the condition of the house, appellant testified that she worked eleven hours a day, five days a week, and half days on Saturdays, and had four children who did not want to do anything. She said that she was presently working on making better choices in her life and that she planned on going to school for interior decorating when released from prison.

For reversal, appellant contends that the chancellor's decision to terminate her rights in D.T. and S.T. was clearly erroneous. She argues that there was no evidence presented that these two children were sexually abused or neglected in any manner, and thus contends that appellee failed to present clear and convincing evidence in support of its petition. We cannot agree.

Appellant is correct to point out that the grounds for termination of parental rights must be proven by clear and convincing evidence. Ark. Code Ann § 9-27-341(b) (Supp. 1995). When the burden of proving a disputed fact in chancery court is by clear and convincing evidence, the question we must answer on appeal is whether the chancellor's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Beeson v. Arkansas Department of Human Services*, 37 Ark. App. 12, 823 S.W.2d 912 (1992). In resolving the clearly erroneous question, we must give due deference to the opportunity of the chancellor to judge the credibility of the witnesses. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992). Repeatedly our courts have stated that there are no cases in which the superior position, ability, and opportunity to view the parties carry as great a weight as those involving minor children. *Norwood v. Robinson*, 315 Ark. 255, 866 S.W.2d 398 (1993).

In terminating appellant's parental rights, the chancellor based his decision on Ark. Code Ann. § 9-27-341(b)(1) & (b)(2)(F) (Supp. 1995). In relevant part, the statute provides:

> (b) An order forever terminating parental rights shall be based upon a finding by clear and convincing evidence:
>
> (1) That it is in the best interest of the juvenile;
>
> (2) Of one or more of the following grounds:

(F)(i) The parent is sentenced in a criminal proceeding for a period of time which would constitute a substantial period of the juvenile's life and the conditions in subdivision (b)(2)(A) or (B) of this section have also been established.

(ii) For purposes of this section, "substantial period" means a sentence, and not time actually served, of no less than fifteen (15) years, none of which have been suspended.

Arkansas Code Annotated § 9-27-341(b)(2)(A) provides:
(A) That a juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the home for twelve (12) months, and, despite a meaningful effort by the Department of Human Services to rehabilitate the home and correct the conditions which caused removal, those conditions have not been remedied by the parent. It is not necessary that the twelve-month period referenced in this subdivision (b)(2)(A) immediately precede the filing of the petition for termination of parental rights, or that it be for twelve (12) consecutive months.
The stated intent of this statute is to provide permanency in a juvenile's life in all instances where return of a juvenile to the family home is contrary to the juvenile's health, safety, or welfare, and it appears from the evidence that return to the family home cannot be accomplished in a reasonable period of time. Ark. Code Ann. § 9-27-241(a) (Supp. 1995).

In the case before us, there is evidence that appellant stands convicted of crimes for which she has been sentenced to a total of forty years in prison. This sentence constitutes a "substantial period" of the children's lives as set out in the statute. Also, the children had been declared to be dependent-neglected and had been out of the home for more than the requisite one-year period of time. There is further evidence that appellee's efforts to rehabilitate the family had proved unsuccessful. The chancellor was also entitled to believe the testimony of J.T. and to disbelieve that of appellant. We also think that there is ample evidence in the record from which the chancellor could conclude that the safety and welfare of D.T. and S.T. would be best served by terminating appellant's parental rights. Our case law is clear that termination of parental rights is an extreme remedy and is in derogation of the natural rights of parents. *Anderson v. Douglas, supra.* However,

parental rights will not be enforced to the detriment or destruction of the health and well being of the child. *Corley v. Arkansas Department of Human Services*, 46 Ark. App. 265, 878 S.W.2d 430 (1994). We are unable to say that the chancellor's findings that termination was in the best interest of the children and that the statutory requirements had been met are clearly against the preponderance of the evidence.

Affirmed.

NEAL and GRIFFEN, JJ., agree.