Wanda MALONE *v.* ARKANSAS DEPARTMENT
of HUMAN SERVICES

CA 00-207 30 S.W.3d 758

Court of Appeals of Arkansas
Division III
Opinion delivered November 15, 2000

*Anne Orsi Smith, P.A.*, for appellant.

*Kathy L. Hall*, for appellee.

*Stasia D. Burk*, attorney ad litem.

WENDELL L. GRIFFEN, Judge. Wanda Malone appeals from the order of the Pulaski County Chancery Court terminating her parental rights with respect to her three children. She argues that a) the chancellor erred in terminating her parental rights because she was in jail and unable to comply with reunification orders, and b) the goal of adoption cannot be achieved because the parental rights of her children's fathers were not terminated. We disagree, hold that the chancellor's order was not clearly erroneous, and affirm.

The Arkansas Department of Human Services (ADHS) opened a case on appellant's family on September 16, 1997, when

her one-year-old son was found alone in a parking lot. Appellant had been in jail for two months and had left her two daughters and son in the care of her boyfriend. The ADHS did not remove the children at that time and lost contact with the family.

In January 1998, Dora Watson, paternal grandmother of appellant's youngest daughter, informed ADHS that appellant's daughters were living with her. The girls indicated to ADHS that they did not want to live with their mother because she was using drugs and made them steal. On May 9, 1998, appellant and her boyfriend were arrested for shoplifting, possession of drugs, and endangerment of her son.

The ADHS filed a petition to have appellant's children adjudicated dependent-neglected, alleging that appellant was in jail, that her son had been unsupervised on two occasions, and that her daughters stated they did not want to live with her because she was using drugs and made them steal. Based on appellant's admission to a long-term dependency on crack cocaine and her testimony that she was due to enter a drug rehabilitation facility, plus evidence that appellant neglected the children's physical and emotional needs, the chancery court determined that they were dependent-neglected and that it was in their best interests to remove them from appellant's custody.

The chancery court also ordered the following reunification services: 1) appellant was to complete the S.T.E.P. program; 2) appellant was to submit to regular drug screens and refrain from using any illegal drugs; and 3) appellant and her boyfriend were to complete parenting classes. Appellant was allowed two hours of supervised visitation three times per week at Mrs. Watson's home. The girls were ordered to be assessed for counseling, and Mrs. Watson was ordered to participate with them if counseling was deemed necessary. The chancery court conducted periodic review hearings from November 1998 through May 1999. The chancellor consistently ordered appellant to continue with the foregoing conditions, and to provide a stable home environment.

The court later conducted a permanency planning and a termination hearing. The chancellor heard evidence at the termination hearing that appellant had been convicted of the drug charges and the charge of endangering her son. She received a six-year sentence on the drug charges, and was ordered to spend at least six

additional months in a drug rehabilitation program upon her release. At the time of the termination hearing, she was waiting to be transferred to prison to serve her sentence on the felony possession charges.

At the termination hearing, appellant testified that the January 1998 theft charge occurred because she was stealing for her children. She denied forcing her children to steal. She stated that she had not used drugs since September 1998. She admitted that she did not comply with the court orders for even the brief period of time she was not incarcerated, but she stated that parenting classes were not offered to her in jail and when she was out of jail, none were scheduled. She claimed that she did not know who her caseworker was or how to get in touch with anyone to receive services.

Her daughters testified that they did not want to live with her and they wanted to live with Mrs. Watson. Both girls indicated they understood that the purpose of the hearing was to terminate appellant's rights with respect to them. Appellant's younger daughter testified:

> I don't think my mom can take care of us right now because she's in jail. She went to a rehab and didn't stay. And she got back out and done the same thing she was doing. Even if she got out of jail and went rehab, I still wouldn't stay with her. She's still going to be the same person and she's still going to be doing drugs.

She further testified, "I always remember her using drugs. There was never a time when she didn't use drugs." However she indicated that she desired to see appellant "if she's not using drugs." Appellant's older daughter testified that she did not want to stay with her mother, and that things were "still good" at Mrs. Watson's home. She testified that appellant made her steal cigarettes when she was in the fifth grade. She also stated her desire to see her mother if she remained drug-free.

The chancery court found that clear and convincing evidence warranted termination of appellant's parental rights. The court found that appellant had not complied with its orders, had not rehabilitated her home, and had not corrected the circumstances that caused her children to be removed. The chancellor noted that appellant had been in and out of jail during the pendency of this case, but did not comply with the court orders even for the brief

time when she was not in jail. The chancellor further noted that appellant had entered a drug rehabilitation program, but did not complete it because she had to return to jail. Finally, the chancellor noted that though she did exercise visitation even while in jail, appellant did not complete parenting classes. Although the State had also petitioned the court for termination of the fathers' rights, the court did not terminate any of their respective rights. However, the court noted that ADHS had an appropriate plan for the children to be adopted, and set adoption as the case plan goal. Appellant appeals from this order.

Appellant argues that it is unrealistic to punish an incarcerated parent for not availing herself of services ordered by the court that are not available to her in jail. She cites *Crawford v. Dep't of Humans Servs.*, 330 Ark. 152, 951 S.W.2d 310 (1997), for the proposition that imprisonment is not conclusive on the termination issue. She also relies upon *Thompson v. Arkansas Dep't of Human Servs.*, 59 Ark. App. 141, 954 S.W.2d 292 (1997). In affirming the termination of the appellant's parental rights in *Thompson*, we observed that the parent had been sentenced to serve forty years in prison and was not likely to be released from jail until after the children were grown. The *Thompson* court found that this sentence constituted a "substantial period of the children's lives" under Arkansas Code Annotated section 9-27-341(b)(2)(F) (Supp. 1999). Appellant maintains that her situation is distinguishable from the parent's situation in *Thompson* because she maintained frequent contact with her children and gave her tax refund to help support them even though she had not been ordered to pay child support.

Appellant also argues that termination of her parental rights will not further the goal of adoption because the fathers' rights were not terminated. She claims that terminating her rights serves no purpose except to keep the children in foster care or Mrs. Watson's care indefinitely, and maintains that termination was not necessary to keep the children in Mrs. Watson's care.

■ The primary consideration in termination of parental rights cases is the best interest of the child. *See* Ark. Code Ann. § 9-27-102 (Repl. 1998) & § 9-27-341 (Supp. 1998). The termination statute under which appellant's parental rights were terminated is section 9-27-341, which allows a chancery court to enter an order terminating parental rights if the court determines by clear and convincing evidence that it is in the best interest of the child, the

child has been adjudicated dependent-neglected, and the child has remained out of the home for twelve months.

The burden on the party seeking to terminate the parental relationship is a heavy one under Arkansas law. First, the supreme court has held that "[o]ur caselaw is clear that termination of parental rights in an extreme remedy . . . [that] will not be enforced to the detriment or destruction of the health and well-being of the child." *Gregg v. Arkansas Dep't of Human Servs.*, 58 Ark. App. 337, 340 952 S.W.2d 183, 184 (1997) (citing *Corley v. Arkansas Dep't of Human Servs.*, 46 Ark. App. 265, 267, 878 S.W.2d 430, 431 (1994)). Second, the governing statute requires that the party seeking to terminate the parental relationship demonstrate its position by clear and convincing evidence. *See* Ark. Code Ann. § 9-27-341 (Supp. 1998). Under Arkansas law, "clear and convincing evidence is that degree of proof which will produce in the fact finder a firm conviction as to the allegation to be established." *See Anderson v. Douglas*, 310 Ark. 633, 637, 839 S.W.2d 196, 198 (1992).

We have stated that "[w]hen the burden of proving a disputed fact in chancery court is by 'clear and convincing evidence,' the question we must answer on appeal is whether the chancellor's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous." *Thompson v. Arkansas Dep't of Human Servs.*, 59 Ark. App 141, 146, 954 S.W.2d 292, 294 (1997) (citing *Beeson v. Arkansas Dep't of Human Servs.*, 37 Ark. App. 12, 14, 823 S.W.2d 912, 913 (1992)). In determining whether a finding is clearly erroneous, we give due deference to the opportunity of the chancellor to judge the credibility of the witnesses. *See Anderson v. Douglas, supra.*

We hold that the chancellor did not err in terminating appellant's parental rights. Appellant was in and out of jail during the pendency of this case. Granted, the mere fact that she was incarcerated at the time of the termination hearing is not dispositive of the termination issue. *See Crawford v. State, supra.* However, our supreme court has stated that a parent's imprisonment does not toll a parent's responsibilities toward her children. *See Zgleszewski v. Zgleszewski*, 260 Ark. 629, 542 S.W.2d 765 (1976). As the children's attorney *ad litem* argues, tolling a parents' obligations to comply with reunification orders while they are in jail would be contrary to the goal of the juvenile code to provide permanency for the children.

The appropriate inquiry where a parent has been ordered to comply with a court's reunification orders and is incarcerated is whether the parent utilized those resources available to maintain a close relationship with the children. *See Zgleszewski v. Zgleszewski, supra.* In this case, appellant exercised visitation with her children and sent them letters when she was incarcerated. She also gave them $200 from an income tax return. Further, there was no finding in the record that she ever failed a drug screen, and she testified that she completed a ten-day drug treatment program.

However, the record is replete with evidence that appellant chose to put her own interests above those of her children. The ADHS offered appellant parenting classes and lay therapy services in an effort to assist her. When appellant did not comply with these services, she was placed on a waiting list, and the agencies offering her services unsuccessfully attempted to contact her. The chancery court and the ADHS worked with appellant over a period of fourteen months in an effort to reunify the family. Appellant complied with some of the court's orders, but she did not successfully complete drug treatment and did not maintain a stable home. She was dropped from the S.T.E.P. program for noncompliance, and admitted that she used crack cocaine after she was arrested on the possession and endangerment charges.

Appellant apparently made no attempt to comply with the court's orders even when she was not incarcerated. She does not argue that the evidence was insufficient to terminate her parental rights and concedes that she did not correct the conditions that caused the children's removal. She remained out of jail or rehabilitation for only twenty-four days during the pendency of this case, and admitted that she did not comply with the court orders for even that brief period of time. She claimed she did not know whom to contact in order to receive services and admitted that she did not call ADHS to get this information. Yet, prior to the children's removal from her home, appellant called ADHS and asked that the children be placed with Mrs. Watson. Therefore, her argument that she did not know whom to contact in order to receive services is unpersuasive.

Appellant not only failed to comply with the court's orders, she also directly disobeyed them. She took the children from Mrs. Watson's home on more than one occasion, without Mrs. Watson's permission and in violation of the court's order that super-

vised visitation was to be conducted at Mrs. Watson's home. On one occasion, appellant kept her son for three days before the police located him and returned him to Mrs. Watson.

 Further, the testimony supports that appellants' children are thriving under Mrs. Watson's care. She appears to have provided the children a stable home environment. Mrs. Watson has been diligent with regard to attending counseling sessions with the children, and the children's various caseworkers testified as to the improvement in the children's demeanor. Appellant's oldest daughter had been diagnosed with Tourette's syndrome and was receiving appropriate care. Her son, who suffers from developmental delays, was also receiving appropriate care. Her daughters testified that their grades were improving, and they wanted to live with Mrs. Watson. The children's improvement while in foster care is an appropriate factor for the chancery court to consider when determining whether parental rights should be terminated. *See Crawford v. Dep't of Human Servs., supra.*

██ In addition, while the fact that appellant is a repeat offender is not dispositive, the chancellor was allowed to consider the fact that she was arrested on numerous charges within a nineteen-month period, while she was under court orders to maintain a stable home and avoid taking drugs. She was sentenced to serve a maximum of six years in prison, followed by a six-month stay in a rehabilitation facility upon her release. In affirming termination of parental rights in *Crawford v. State, supra,* the court cited the fact that the parent could be incarcerated for up to four more years, and would not be able to care for his children during that time. Although appellant's sentence is much shorter than the appellant's sentence in *Thompson v. Arkansas Dep't of Human Servs., supra,* that case is inapposite in this respect because the parent's rights in that case were terminated under a different section of the statute that provides a separate ground for termination based on a substantial prison sentence.

However, the chancery court did not terminate appellant's rights because she had been in jail. Her parental rights were terminated because the statutory requirements for termination were met by clear and convincing evidence. The children had been adjudicated dependent-neglected; the children had been out of the home for twelve months; and ADHS made a meaningful effort to rehabilitate the home and correct the conditions that caused removal.

Finally, appellant's *conduct that led to her incarceration*, in addition to her conduct while she was not incarcerated, convinced the chancellor that appellant failed to remedy the conditions that caused her children to be removed from her home. *See* Ark. Code Ann. § 9-27-341(b)(3).

 Based on the foregoing evidence, we hold that the chancellor's order was not clearly erroneous. As the chancellor stated in his order:

> It is no one's fault but Ms. Malone's that she has criminal problems that have caused her to be locked up and that have caused her to now be on her way to prison. She has chosen a lifestyle of drugs and criminal activity over being a fit and proper parent who can properly provide for the needs of her children. She is not a fit and proper parent for these children. These children need a parent who can make appropriate decisions in her own life so that she can provide guidance, direction, and control in their lives.

 We are not persuaded by appellant's argument that termination of her parental rights will not further the goal of adoption. First, appellant did not raise this argument below. Second, section 9-27-341(c)(2)(A)(i) provides that termination of the parental relationship does not affect the relationship between the other parent and the child/children. Therefore, appellant does not have standing to raise this issue.

 Moreover, appellant's argument seems to be premised on the erroneous assertion that the chancery court would not be able to authorize an adoption because the fathers' rights had not been terminated. This is simply not true; the fathers may give their consent to adoption, or the chancery court may find that the fathers are unreasonably withholding their consent. *See* Ark. Code Ann. § 9-9-220; *see also Lindsey v. Ketchum*, 10 Ark. App. 128, 661 S.W.2d 453 (1983). Therefore, the goal of adoption is not unrealistic.

Affirmed.

KOONCE and STROUD, JJ., agree.