Brandon J. Harrison, Judge, dissenting. |,I respectfully disagree with my colleagues’ decision to affirm the termination of George Brumley’s parental rights because the circuit court’s decision is not adequately grounded in the law or the record. We all agree that the court’s reliance on the 12-month failure to remedy the cause for removal, Arkansas Code Annotated section 9 — 27—341(b)(B)(B)(i) (a), is an error. Because Brumley did not cause G.B.’s initial removal, he cannot be held responsible for not remedying the cause of it. The only other ground on which the court’s termination was based — presuming it terminated Brumley’s rights for a second reason — is the “other factors” ground. I. The “Other Factors” Ground I presume that the circuit court decided to terminate Brumley’s rights on two grounds, rather than one, because it is not crystal clear that the court ruled on the. “other factors” ground, given its oral ruling and some of the handwritten notations made on the form order that was entered. The written order, which is essentially a preprinted form that the court completed, does have the “other factors” grounds box checked. But the court also wrote elsewhere in the order that continuing contact between father and son could harm G.B. because “George Brumley has remained incarcerated throughout the case — he has not seen [G.B.] since 2007, when he went to prison. While Mr. Brumley has participated in services in prison, he is not able to take his son today.” Neither Brumley nor the majority opinion questions that the court terminated on the “other factors” ground, so I address it too. Brumley argues that the court’s reliance on the “other factors” ground is mistaken because he was already incarcerated when G.B. was removed from his mother’s care, an event that led to DHS filing a dependency-neglect petition. Because his imprisonment was |i>not an issue that arose after the dependency-neglect petition was filed, Brumley argues, it was temporally impossible for the “other factors” ground to have been triggered in this case. I agree. Here is the “other factors” ground: That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the .juvenile’s health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent’s circumstances that prevent the placement of the juvenile in the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)faJ (emphasis added). The statute plainly applies only when the facts that allegedly support a petition to terminate arise after DHS has filed the petition for dependency-neglect. Because no one contends that Brumley’s incarceration arose after the dependency-neglect petition was filed, the circuit court’s reliance on the “other factors” ground should be reversed. The majority opinion does not explain why the first statutory condition was met in this case. (In procedural fact, there is no majority decision on whether the circuit court’s “other factors” ruling should be affirmed given this dissent and Judge Hixson’s concurrence.) Because DHS failed to meet the threshold event to trigger the “other grounds” statute in the first place, there is no need to discuss the additional requirements in the section. But assuming for the sake of argument that we had to go deeper into the statute, then the second statutory condition in section 9-27-341(b)(3)(B)(vii)(a.j was not met either. DHS must have “of-fere[ed] Inappropriate family services” to Brumley, and it did not. The majority holds that Brumley waived any failure-of-service complaints on appeal because he did not appeal, the |scourt’s prior finding that “DHS had made reasonable efforts,” or because he failed to “cite any specific services that DHS should have or even could have provided for him while he was incarcerated.” These points do not convince me to affirm when the whole record is considered. First, the only case plan in the record as to Brumley was created the day of the termination hearing. Caseworker Miranda Collins, who was the most recent caseworker on Brumley’s file, had been on the case two months when she testified during the hearing. An excerpt from Brumley’s cross-examination of Caseworker Collins establishes that the case plan was generated the same day that the termination hearing was held: Defense Counsel: Okay, I’m gonna ask you a question about your case plan. It says it was created today. Collins: Yes. [[Image here]] Defense Counsel: ... page two ... you talk about all these things [George] needs to do to be able to care for himself and the children, which is-this the plan you made today? Collins: Yes. Defense Counsel: But yet you’re recommending that his rights be terminated. How is he to do these things such as get employment, provide a safe home, and so forth if his rights are terminated? Collins: I don’t know. Not only did Caseworker Collins reveal that the case plan was created the day of the termination hearing, she also admitted that she had not had a case-plan staffing since being |4assigned the case. In fact, she admitted on cross-examination that the last case-plan staffing had occurred in January 2018, almost an entire year before the termination hearing. How could Brumley fail to follow a case plan that he never received — one that was “created” and “made” the day that the hearing was convened? Caseworker Collins also testified during the termination hearing that she knew Brumley had taken a parenting class while in prison and that she had neither contacted Brumley nor written him a letter during this case although she knew his location and address. For his part, Brumley took advantage of the prison programs offered to him. He testified that he participated in three parenting classes, a nine-month drug-treatment behavior-modification program, PALS program, and an 18-month-long Pathway to Freedom life-skills program. Brumley also said that he would be paroled in approximately nine months and had a sponsor and a place to live when released. No rebuttal evidence was presented. The permanency-planning order notes that Brumley “minimally participated” in reunification services by taking the courses mentioned. In its oral ruling on termination, however, the court stated: “[Brumley’s] taken advantage of every single program they have in prison.” The court also acknowledged that Brumley did not test positive for drugs while imprisoned. The circuit court seemed to rule that Brumley’s imprisonment relieved DHS of its duty to provide services. “DHS can’t provide services to [Brumley in prison].” On appeal, DHS echoes the court by arguing that it had no duty to provide services to Brumley given his incarceration, but it has provided no legal authority to support its no-duty argument or |fithe court’s ruling. I have likewise found no authority that expressly relieves DHS of the duty to offer services to an imprisoned parent. The “other factors” subsection’s third and final inquiry is whether a parent manifests “incapacity or indifference” to a child. The circuit court found that Brumley had financially supported G.B., from prison, for five years. Hearing testimony also proved rather clearly that Brumley had written many letters (at least once a week) to the children[1] while in prison and that the letters’ content was proper. He had also urged his mother to visit the kids on his behalf. G.B.’s mother, Angela Poss, testified that Brumley had sent “a tremendous amount of [financial] support” to her children while he was incarcerated. This all occurred before Brumley was legally adjudicated as G.B.’s father during the latter portion of the DHS case. The main thrust of the case against Brumley appears to be stable-housing and employment-related concerns. The majority says that Brumley was ordered to obtain and maintain stable housing and employment and did not comply with those court orders. Brumley, the majority concludes, was “incapable of completing the case plan and incapable of building a relationship with G.B.” Setting aside the obvious case-plan timing and communication problem noted above, the legal standard on this point is not what the majority applies. The governing standard is whether an incarcerated parent like Brumley used the available services and maintained a close relationship with the children. Malone v. Ark Dep’t of Human Servs., 71 Ark. App. 441, 448, 30 S.W.3d 758, 762 (2000). I believe Rhe did so to a degree that warrants a course other than termination at this point. In fact, as I read the record, the circuit court found that Brum-ley had essentially done all he could have done from prison. II. The Alternate Imprisonment Ground We now reach the nuclear option that the majority has deployed in the case. The circuit court crossed out/struck through the imprisonment ground in its handwritten order. That fact was a main reason why the first panel ordered a merit brief as to Brumley’s termination. See Poss v. Ark Dep’t of Human Servs., 2014 Ark. App. 514, at 9, 443 S.W.3d 594, 599 (“Here, the imprisonment ground was pled against Brumley in DHS’s termination petition, but the court did not terminate Brumley’s parental rights on the imprisonment ground. In fact, it marked through/ crossed out the imprisonment ground in its order.”). The majority nonetheless relies on the stricken ground so'it may hold that Brumley was imprisoned for a substantial period of G.B.’s life. Ark. Code Ann. § 9-27-341(b)(3)(B)(viii)(a). The majority believes that the imprisonment ground was proven, “though [such a ruling is] not stated in the circuit court’s order.” I do not think the option the majority uses should issue in this case. Here is why, in no particular order of importance: first, DHS does not ask us to do so; its restraint is correct, in my view. Second, the record does not tell us the length of Brumley’s prison sentence; this fact technically matters because our case-law requires it when a circuit court weighs whether to terminate an incarcerated parent’s parental rights. See, e.g., Hill v. Ark Dep’t of Human Servs., 2012 Ark. App. 108, at 8, 389 S.W.3d 72, 76 (three-year [^prison sentence is a substantial portion of a two-year old child’s life). Third, as mentioned, the first panel did not choose to affirm the termination in the manner that the majority has done today. A foolish consistency may be the hobgoblin of little minds, warned a sage, but I see no reason to alter that prior course now. Finally, looking forward, a release date of nine months from December 2013 was not a substantial amount of time in the life of nine-year-old G.B., such that subsection 341(b)(3)(B)(viii)(U) should now be used. I have not found any caselaw that adequately supports applying this subsection to Brumley. III. Conclusion The majority is correct: Brumley had only lived with G.B. for approximately six months out of the nine years of G.B.’s life, and Brumley had not seen G.B. since being imprisoned in 2007. The majority is also correct that Brumley may not prove to be “a viable placement option for G.B.” once released from prison. And I concede that terminating Brumley’s parental rights may very well be in G.B.’s best interest. But determining a child’s best interest is only part of the statutory analysis. DHS must first prove a statutory ground for terminating Brumley’s parental rights by clear- and-convincing evidence. Having sought to employ the most extreme remedy at its disposal, DHS and the circuit court should be required to turn square corners. Jefferson v. Ark. Dep’t of Human Servs., 356 Ark. 647, 660, 158 S.W.3d 129, 137 (2004) (“Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents.”). The record convinces me that the court did not have a serious issue with Brumley’s conduct apart from his imprisonment. Imprisonment of course puts a family in jeopardy; no one takes that fact lightly. But I am |sconcerned that an affirmance on this record practically means that a parent’s incarceration — even if it exists long before a D-N petition is filed, will likely end less than one year from the date of the termination hearing, and the parent has done what he or she could do from prison to maintain contact and provide financial support — inches this State further toward becoming one that treats incarceration as a termination condition per se. But according to our supreme court, an incarceration is “not conclusive on the termination issue.” See Crawford v. Ark. Dep’t of Human Servs., 330 Ark. 152, 155, 951 S.W.2d 310, 313 (1997). I am firmly and definitely convinced that the circuit court erred when it terminated George Brumley’s parental rights when it did. So I respectfully dissent. Whiteaker, J., joins in this dissent. . Brumley wrote both G.B. and his half-sibling, C.F. Brumley is not C.F.’s father, and C.F. is not a party to this appeal.