2015 Ark. App. 243

**Ashley Terry BASHAM and Charles Basham, Appellants**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and Minor Child, Appellees**

No. CV–14–907

Court of Appeals of Arkansas, DIVISION I.

Opinion Delivered April 15, 2015

Dusti Standridge, for appellant.

Tabitha Baertels McNulty, Office of Policy and Legal Services, for appellee.

Chrestman Group, PLLC, by: Keith Chrestman, attorney ad litem for minor child.

LARRY D. VAUGHT, Judge

Appellants Ashley Terry Basham and Charles Basham appeal from the termination of their parental rights to their child, D.B., pursuant to Arkansas Code Annotated section 9–27–341 (Supp. 2013). Ashley argues on appeal that (1) the trial court erred in failing to determine whether she was indigent and appoint counsel and (2) insufficient evidence supports the trial court's termination decision. Charles's counsel has filed a no-merit brief and a motion to withdraw, alleging that there are no meritorious grounds for his appeal. We reverse the order terminating Ashley's

parental rights and remand. We affirm the order terminating Charles's parental rights and grant his counsel's motion to withdraw.

On June 28, 2013, the Arkansas Department of Human Services (DHS) took emergency custody of four-year-old D.B. after the Arkansas State Police executed a search warrant on a |₂home in which Charles and D.B. were living. (Ashley was incarcerated in Texas). While executing the warrant, the state police observed that D.B. and another child were present in the home where methamphetamine and a firearm were discovered. Additionally, the home was in disarray, there was limited food, and there was no working toilet. Charles was arrested after admitting methamphetamine use and testing positive for methamphetamine and opiates. He has remained incarcerated throughout the pendency of this case.

D.B. was subsequently adjudicated dependent-neglected, and the goal of the case was reunification. Because D.B.'s parents were incarcerated, the case plan ordered them to complete substance-abuse counseling and remain drug free upon their release. Charles was also ordered to complete parenting classes upon his release, and he was permitted to have supervised visitation.

A review order entered on November 11, 2013, provided that Charles was complying with the case plan by availing himself of services while incarcerated. The review order also stated that Ashley, who had been released and attended the review hearing, had obtained employment, was living with her mother, and had submitted to drug testing, which was negative.

A February 14, 2014 review order stated that Ashley had not complied with the case plan and that her whereabouts were unknown[1] and that Charles had been complying with the case plan by availing himself of services while incarcerated. The trial court ordered a home study on Ashley's mother, who lived in Texas.[2]

|₃On May 7, 2014, a permanency-planning hearing was held, at which time the goal of the case was changed to adoption based on the parties' incarceration. The trial court ordered that home studies be performed on relatives who had notified DHS of an interest in D.B. Thereafter, DHS filed a petition for the termination of Ashley's and Charles's parental rights. Four statutory grounds were pled against the parents: (1) Ark.Code Ann. § 9–27–341(b)(3)(B)(i) (a)—that a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent; (2) Ark.Code Ann. § 9–27–341(b)(3)(B)(ii) (a)—the juvenile has lived outside the home of the parent for a period of twelve months, and the parent has willfully failed to provide significant material support in accordance with the parent's means or to maintain meaningful contact with the juvenile; (3) Ark.Code Ann. § 9–27–341(b)(3)(B)(vii) (a)—that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subse-

---

1. Ashley had returned to prison.

2. The home study on Ashley's mother was not approved.

quent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent; and (4) Ark.Code Ann. § 9–27–341(b)(3)(B)(viii)—the parent is sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life.

A July 30, 2014 termination hearing was held, after which the trial court terminated Ashley's and Charles's parental rights. The court found that DHS proved all four grounds alleged in the petition and that termination was in D.B.'s best interest. The termination order was entered August 6, 2014, and these appeals followed.

### I. Ashley's Appeal

Ashley, who was incarcerated during most of these proceedings, attended the termination hearing via telephone and represented herself. Before the hearing began, the trial court read into evidence a letter Ashley had written to the court in response to DHS's petition to terminate her parental rights to D.B. In pertinent part, the letter stated

> I am writing concerning my son, D.B. On this day of June 9th, 2014. I would like to appeal the [ ] accusations made against me and the well being of my son. Court has summonsed me to a termination of my parental rights on July the 16th, 2014.... I am aware that I have a right to a jury trial and an attorney, which I would now like to take action upon.

After the trial court read the letter into the record, counsel for Charles stated

> Your Honor, I don't mean to be contrary, but obviously, [Ashley] was requesting an attorney in her answer, and no attorney has been appointed for her, and I think she is entitled to an attorney if she asks for one, and she's indigent, which she would obviously be indigent

since she's been incarcerated. So, I don't feel like that we can go forward now without, and I don't know that it's my place to bring that up, but it just struck me when you were reading the letter that she had requested an attorney, but she does not have one.

Counsel for DHS responded that the hearing could proceed against Charles. The trial court then asked Ashley if she was ready to proceed, and Ashley answered "yes." The trial court stated, "All right. We will proceed, and you [Ashley] continue to listen to the witnesses and the testimony." The termination hearing proceeded.

Ashley's first argument on appeal is that the trial court erred as a matter of law when it failed to determine her indigency status and appoint an attorney to represent her upon her request for counsel for the termination proceedings. In Arkansas, the right to appointed counsel in the termination-of-parental-rights proceedings is absolute. "All parents shall have the right to be appointed counsel in termination of parental rights hearings, and the court shall appoint counsel if the court makes a finding that the parent is indigent and counsel is requested by the parent." Ark.Code Ann. § 9–27–316(h)(1)(D) (Supp. 2013); *see also Bearden v. Ark. Dep't of Human Servs.*, 344 Ark. 317, 325, 42 S.W.3d 397, 401–02 (2001) (holding that the State of Arkansas has chosen to allow the appointment of counsel for indigent parents in all parental-termination proceedings).

Despite having the right to counsel at the termination hearing and her specific request for counsel to represent her at that hearing, the facts are undisputed that Ashley was denied this right. Because the trial court failed to determine whether she was indigent and/or appoint counsel for her, it violated section 9–27–316(h)(1)(D) as

a matter of law.[3] Accordingly, we reverse the order terminating Ashley's parental rights to D.B. and remand for proceedings consistent with this opinion.[4]

## II. Charles's No-Merit Appeal

Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i), Charles's attorney has filed a no-merit brief,[5] asserting that there are no issues that would support a meritorious appeal, and a motion to withdraw as counsel. Counsel argues there were only two adverse rulings—the denial of Charles's motion for a continuance at the beginning of the termination hearing and the termination decision.

At the beginning of the termination hearing, counsel for Charles orally moved for a continuance arguing that home studies on the paternal grandparents, Dwayne Basham and Betty Blake Basham,[6] were ordered by the trial court but not conducted. Charles's counsel also argued that there was no permanency-planning order in the record; therefore, the petition to terminate parental rights was void because DHS had not been authorized to proceed with termination. DHS argued that the motion for continuance was not timely and that a permanency-planning hearing was held in May 2014, authorizing termination, but an order was not entered at that time. Finally, DHS argued that it had complied with the trial court's order to conduct the home studies.

In support of the motion for continuance, Dwayne testified about his extensive criminal history, which included six convictions.[7] He added that he had been released from prison five months prior to the hearing and would be on parole for twenty years. He added that he had been incarcerated nearly all of D.B.'s life. Dwayne said that Betty had never met D.B.

Dorothy Jackson, a DHS representative, testified that when the home study on Dwayne was ordered, the process was stopped because Dwayne did not pass his background check due to his criminal history. Jackson said that a home study was requested on Betty, who was living in Texas, but it could not be completed there because she moved from Texas when she married Dwayne.

After being married two weeks, Dwayne and Betty met with Jackson and requested a home study on them as a married couple. Jackson initiated the study on the Bashams and learned that the couple had not spoken in twenty-five years and that Betty had never met D.B. Due to Dwayne's criminal history and the lack of a relationship between Betty and D.B., Jackson determined that a home study would not be approved for the couple.

On this evidence, the trial court denied Charles's motion for continuance, finding that it was untimely. The trial court also

3. DHS and the attorney ad litem concede this issue on appeal.

4. Ashley also argues on appeal that the trial court clearly erred in finding that DHS proved that termination was in D.B.'s best interest and that statutory grounds supported the termination. We do not reach these arguments based on our holding on her first point on appeal.

5. A copy of the no-merit brief was delivered to Charles. He did not file pro se points in response.

6. Dwayne and Betty were not married when Charles was born. They married approximately six weeks prior to the termination hearing.

7. Dwayne's Arkansas Criminal History Report reflected that he was convicted of arson, theft of property (twice), reckless driving, robbery, and residential burglary.

found that there had been a permanency-planning hearing authorizing termination.[8] Finally, the trial court found that DHS had complied with the order to perform home studies and that the evidence showed that Dwayne's criminal history and the couple's lack of a relationship with D.B. would have prevented approval.

■■■ Counsel argues that the trial court's denial of the motion for continuance is not an issue that would support a meritorious appeal. A trial court shall grant a motion for continuance only upon a showing of good cause and only for so long as is necessary. *Jones–Lee v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 160, at 23, 316 S.W.3d 261, 273. The granting or denial of a motion for continuance is within the sound discretion of the trial court, and that court's decision will not be reversed absent an abuse of discretion amounting to a denial of justice. *Id.*, 316 S.W.3d at 273. Additionally, the appellant must show prejudice from the denial of a motion for continuance. *Id.*, 316 S.W.3d at 273.

We hold that the trial court did not abuse its discretion in denying the motion for continuance; therefore, we agree with counsel that there is no merit to an appeal of this adverse ruling. First, the motion was not timely. The home studies were ordered in May 2014, yet Charles's first complaint about them not being performed was at the termination hearing on July 30, 2014. At that time, DHS had already made arrangements to transport Charles from prison, made Ashley (who was in prison) available by telephone, and subpoenaed witnesses. Second, the parties' counsel agreed that the permanency-planning hearing was held and that at that hearing the trial court had authorized DHS to proceed with termination. Third, the evidence showed that DHS had complied with the order to perform home studies. Jackson requested and started home studies on Dwayne and Betty individually and as a couple; however, Jackson testified that they would not be approved due to Dwayne's criminal history and the lack of a bond/relationship between them and D.B. Additionally, Charles did not prove prejudice because he failed to present evidence that additional time would have resulted in an approved home study on Betty and Dwayne.

■■■ The second adverse ruling was the trial court's termination decision. A trial court's order terminating parental rights must be based upon findings proved by clear and convincing evidence. *Sims v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 137, at 3, 2015 WL 831178 (citing Ark.Code Ann. § 9–27–341(b)(3) (Supp. 2013); *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001)). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Sims,* 2015 Ark. App. 137, at 3, 2015 WL 831178. On appeal, the appellate court will not reverse the trial court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. *Id.*

Pursuant to Ark.Code Ann. § 9–27–341(b)(3), an order terminating parental

---

8. The trial court ordered that the permanency-planning order be entered nunc pro tunc, and that order was filed on August 6, 2014.

rights shall be based upon a finding by clear and convincing evidence that it is in the best interest of the juvenile, including consideration of the likelihood of adoption and the potential harm, specifically addressing the effect on the health and safety of the child, caused by continuing contact with the parent. The order terminating parental rights must also be based on a showing $|_{10}$of clear and convincing evidence as to one or more of the grounds for termination listed in Ark. Code Ann. § 9–27–341(b)(3)(B).

The trial court's order in this case found clear and convincing evidence to support all four grounds alleged in the termination petition that were pertinent to Charles. However, as counsel notes, only one ground must be proved to support termination, and counsel focuses the discussion on the evidence supporting the ground set forth in section 9–27–341(b)(3)(B)(viii)—the parent is sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life.

D.B. was removed from Charles's custody based on the fact that he failed to provide a safe and stable home for D.B. and that there was no legal caretaker for D.B. after Charles's arrest. Thereafter, Charles was sentenced to imprisonment for twenty years. The trial court found that this sentence constituted a substantial period of D.B.'s life in light of the fact that D.B. was four years old.

We agree that there could be no meritorious argument raised on appeal with respect to this ground for termination. The trial court's decision that Charles's incarceration encompassed a substantial period

of his child's life fell within the bounds of our case law. At one end of the spectrum are cases like *Thompson v. Arkansas Department of Human Services*, 59 Ark. App. 141, 954 S.W.2d 292 (1997) (forty-year prison sentence, children ages ten and nine) and *Moore v. Arkansas Department of Human Services*, 333 Ark. 288, 291, 969 S.W.2d 186 (1998) (twenty-eight-year prison sentence, child one year old). The other end of the spectrum is *Hill v. Arkansas Department of Human Services*, 2012 Ark. App. 108, 389 S.W.3d 72 (three-year prison sentence, child two years $|_{11}$old; court terminated parent's rights and reasoned that by time the parent was released from prison the child would have spent "half of her life" in foster care). In the middle is *Fields v. Arkansas Department of Human Services*, 104 Ark.App. 37, 289 S.W.3d 134 (2008) (ten-year concurrent prison sentences, child age ten months). Therefore, we hold that the trial court did not clearly err in finding that Charles's twenty-year prison sentence was a substantial portion of D.B.'s life.[9]

In addition, there is no clear error in trial court's finding that termination was in the best interest of D.B. The court found that there was a risk of harm to D.B. if he was returned to Charles based on Charles's past conduct and his current incarceration. The trial court further found that D.B. was adoptable based on the testimony of an adoption specialist.

Based on our review of the record and the brief submitted, we conclude that counsel has complied with Ark. Sup. Ct. R. 6–9(i) and agree that Charles's appeal is without merit. Therefore, we affirm the termination order as to Charles's parental

9. In reaching this holding, we acknowledge Charles's testimony that he could be paroled for good behavior in 2017. However, we look at the length of the prison sentence, not the potential release date, when reviewing whether this statutory ground was met. *Moses v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 466, at 5, 441 S.W.3d 54, 57 (citing *Bowman v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 477, 2012 WL 4009596).

rights and grant his counsel's motion to withdraw.

Reversed and remanded as to Ashley Terry Basham; affirmed as to Charles Basham; motion to withdraw granted.

Hoofman and Brown, JJ., agree.