

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-14-729

| | |
|---|---|
| JENNIFER JONES<br>**APPELLANT**<br><br>V.<br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES and MINOR<br>CHILD<br>**APPELLEES** | **Opinion Delivered** December 17, 2014<br><br>APPEAL FROM THE SEBASTIAN<br>COUNTY CIRCUIT COURT<br>[NO. JV-12-705]<br><br>HONORABLE JIM SPEARS, JUDGE<br><br>AFFIRMED; MOTION TO BE<br>RELIEVED GRANTED |

## DAVID M. GLOVER, Judge

Jennifer Jones's parental rights were terminated to her daughter, A.J., born April 7, 2012.[1] Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i), her attorney has filed a no-merit brief asserting that there are no issues that would support a meritorious appeal and a motion requesting to be relieved as counsel. The clerk of this court attempted to send a certified packet to Jones, but it was returned "insufficient address," and her attorney had no additional contact information for Jones. We affirm the termination of parental rights and grant counsel's motion to withdraw.

DHS opened a protective-services case on A.J. in September 2012 for failure to thrive.[2]

---

[1]Jones also has three older children, but they have been living with Jones's in-laws since 2012 and are not the subject of this appeal.

[2]A.J. had gained only six ounces over her birth weight at four months old.

In connection with that case, Jones underwent a psychological evaluation in which she disclosed that she was a victim of domestic violence at the hands of her husband, Chadrick Jones.[3] Jones revealed that her husband had choked her until she passed out, had pulled a gun and a knife on her, and had told her that he would kill her if DHS took A.J. DHS assisted Jones and A.J. in relocating to Crisis Center; however, the facility forbade contact with the abuser, and Jones was asked to leave after she was found talking to Chadrick Jones on another resident's phone despite having been previously warned regarding violation of that rule. When Jones left the shelter in November 2012, DHS exercised a hold on A.J. and filed a petition for emergency custody and dependency-neglect; an ex parte order of custody was filed the same day. A January 2013 probable-cause order continued custody of A.J. with DHS. A.J. was adjudicated dependent-neglected in June 2013. The September 2013 review order again continued custody with DHS; the review order noted that the Joneses were now divorced and Jones had completed parenting classes, was attending counseling and had completed her psychological evaluation but she still did not have stable housing and was currently unemployed. The review order further authorized placement of A.J. in the custody of her paternal grandmother in Texas and allowed Jones to have visitation, with DHS providing transportation.

A permanency-planning hearing was held in November 2013, at which time the trial court found that Jones had not complied with the case plan, changed the goal of the case to

---

[3]Chadrick Jones voluntarily relinquished his parental rights on March 17, 2014, and is not a party to this appeal.

adoption, and authorized DHS to file a petition for termination of parental rights. The trial court also ordered Jones to pay $15 per week in child support. DHS filed a petition for termination of parental rights in February 2014, asserting that it was in A.J.'s best interest that Jones's parental rights be terminated and alleging five grounds for termination: (1) A.J. was adjudicated dependent-neglected and continued out of Jones's custody for twelve months and, despite meaningful efforts by DHS to correct the conditions causing removal, they had not been remedied; (2) A.J. lived outside of Jones's home for a period of twelve months, and Jones had willfully failed to provide significant material support or maintain meaningful contact; (3) Jones abandoned A.J.; (4) other factors arose subsequent to the original petition for dependency-neglect demonstrating that return of A.J. to Jones was contrary to her health, safety, and welfare and despite the offer of appropriate family services, Jones had manifested the incapacity or indifference to remedy those issues; and (5) Jones had subjected A.J. to aggravated circumstances.[4]

The hearing on DHS's petition to terminate Jones's parental rights was held April 7, 2014, and the order terminating Jones's parental rights was entered May 28, 2014. The trial court found that it was in A.J.'s best interest for Jones's parental rights to be terminated and that DHS had proved all five statutory grounds alleged in its petition to terminate parental rights. Jones filed a timely notice of appeal.

---

[4]*See* Ark. Code Ann. § 9-27-341(b)(3)(B)(*i*)–(*ix*) (Supp. 2013).



*Sufficiency of the Evidence*

We review termination-of-parental-rights cases de novo. *Spangler v. Arkansas Dep't of Human Servs.*, 2012 Ark. App. 404. Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents. *Watson v. Arkansas Dep't of Human Servs.*, 2014 Ark. App. 28. DHS must prove by clear and convincing evidence—that degree of proof that will produce in the finder of fact a firm conviction as to the allegation sought to be established—that it is in a child's best interest to terminate parental rights, as well as the existence of at least one statutory ground for termination. *Spangler, supra.* In determining the best interest of the juvenile, a trial court must take into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. *Myers v. Arkansas Dep't of Human Servs.*, 2011 Ark. 182, 380 S.W.3d 906. When the burden of proof is clear and convincing evidence, the inquiry on appeal is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous; a finding is clearly erroneous when, although there is evidence to support it, the appellate court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Watson, supra.* However, we give a high degree of deference to the trial court, as it is in a far superior position to observe the parties before it and judge the credibility of the witnesses. *Dinkins v. Arkansas Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

SLIP OPINION

At the termination hearing, Dr. Nancy Powell testified that she performed Jones's November 2012 psychological evaluation. Her testimony was revealing. The evaluation stood out to her because Jones revealed that her husband beat her and called her names; had choked her on occasion until she passed out and had also choked her while she was pregnant; had choked her in the last few days, as was evident from the discoloration around her throat; and had hit her on occasion. Jones told Powell that her son had witnessed the domestic violence between his parents, and her daughter would hide and cry when her father abused her mother; however, Jones said she did not want to leave him. Jones's desire to stay with her abusive husband concerned Powell regarding Jones's judgment and what Jones might expose the children to in the household. Powell stated that Jones took no responsibility for why A.J. was not gaining weight or for not caring for A.J. in an appropriate manner. She believed that Jones had the potential to be physically abusive to a child. While Jones knew what appropriate parenting skills were, Powell was unsure that Jones would use those skills, given her background of abuse. It was Powell's opinion that Jones would need long-term therapy to make the changes required for her to be a healthy parent, and that Jones could not begin to make progress until she was safely out of her abusive situation.

Jones testified that she was currently living with her best friend, Kimberly Brown, and Brown's mother; prior to that, she had lived with her father's girlfriend. Jones said that Brown's children had been removed from her custody by DHS due to Brown's continued use of methamphetamine; however, Jones believed that it would be okay for A.J. to live with her at Brown's house. At the termination hearing, Jones did not have employment,

5

transportation, or a place of her own to live. She stated that she and Chad had divorced, but she talked to him once or twice a week; that the reason they got divorced was because of the abuse; but that she still wanted to continue to try to work things out. She admitted that after she had left Chad she returned to him because he told her that they could works things out; she believed that A.J. was safe in the home because Chad was not violent toward the children, just her; and that it "did not bother her very much" to take a "little punch in the face or a little slap around." Jones stated that, while she was not currently in a relationship, she had been interested in a man who was a recovering methamphetamine addict, but he was not currently using drugs. Jones admitted that she had not seen A.J. in almost nine months. She stated that she had cancelled her visits, even though DHS had been ordered to provide transportation, because she needed to work on herself, and that just because she did not call and check on A.J. did not mean that she did not care. She also admitted that she had not paid any child support for A.J., although she had been ordered to do so, and she had not sent A.J. any birthday or Christmas presents.

DHS caseworker Rebecca Newton testified that Jones had not complied with the case plan; that Jones had not remedied the problems that caused A.J.'s removal; that Jones was in denial as to why A.J. was removed; and that it was a "huge" issue that Jones thought it was okay for Chad Jones to be abusive to her. Newton did not think that A.J. could be safely returned to Jones; it was DHS's recommendation to terminate Jones's parental rights. Newton indicated that there were no barriers to A.J.'s being adopted, and that one of A.J.'s relatives wanted to adopt her.

The trial court terminated Jones's parental rights, finding that it was in A.J.'s best interest to do so. The trial court further found that DHS had proved all five statutory grounds alleged in the termination petition by clear and convincing evidence. We find no error in this decision. It was in A.J.'s best interest for Jones's parental rights to be terminated. One of A.J.'s relatives wanted to adopt her, and A.J. would be at risk for harm if returned to Jones. Jones believed that it was okay for Chad Jones to be abusive to her, so long as he did not harm the children. Jones was living at the time of the termination hearing with a person who had lost custody of her own children due to her continued methamphetamine use.

There was clear and convincing evidence for all five statutory grounds for termination. However, DHS is only required to prove one ground by clear and convincing evidence. One of the grounds alleged was aggravated circumstances. Aggravated circumstances are present when "[a] juvenile has been abandoned . . . or a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification." Ark. Code Ann. § 9-27-341 (b)(3)(B)(ix)(*a*)(*3*)(*B*)(*i*) (Supp. 2013). There was a finding of aggravated circumstances in this case. Specifically, as to this ground, the trial court found:

> The mother has subjected the juvenile to aggravated circumstances. Specifically, the juvenile has been abandoned and there is little likelihood that services to the family will result in successful reunification. The mother's failure to exercise visitation, despite the financial assistance ordered by the Court to be provided by the Department, constitutes abandonment. The mother's failure to adequately address the issues that caused the juvenile's removal and continued removal from their custody, despite being offered all of the appropriate services by the Department, demonstrates that there is little likelihood that further services will result in successful reunification if given more time. Additionally, the mother continues to deny the reasons for the juvenile's removal and therefore cannot remedy these issues, no matter what services are provided, if she does not believe there are any issues that need to be addressed.

7

The trial court's findings clearly set out the reasons why there is little likelihood that any further services to the family would result in successful reunification.

*Other Adverse Rulings*

There was only one additional ruling adverse to Jones other than the sufficiency of the evidence, but it does not constitute reversible error. At the beginning of the termination hearing, the attorney ad litem asked to have a CASA report admitted into evidence. Jones's attorney made a general objection to any hearsay contained in the report, but failed to point out any specific hearsay in the report. The trial court did not rule on this general objection and admitted the CASA report. Because there was only a generalized objection, and the trial court made no ruling on the objection, it was not preserved for appellate review.

Having carefully examined the record and the brief presented to us, we hold that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in termination cases and conclude that the appeal is wholly without merit. Accordingly, counsel's motion to withdraw is granted, and the order terminating Jones's parental rights is affirmed.

Affirmed; counsel's motion to be relieved granted.

GRUBER and VAUGHT, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

No response.