SLIP OPINION

Cite as 2015 Ark. App. 30

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-14-517

| | |
|---|---|
| TIMOTHY CONWAY | **OPINION DELIVERED** JANUARY 28, 2015 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, TENTH DIVISION |
| V. | [NO. 60JV-12-2264] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILD | HONORABLE JOYCE WILLIAMS WARREN, JUDGE |
| APPELLEES | AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

Appellant Timothy Conway appeals the order filed March 21, 2014, by which the Pulaski County Circuit Court terminated his parental rights to his daughter, T.C., born November 20, 2012. He argues that there was insufficient evidence to support the termination of parental rights. We affirm.

On November 20, 2012, Lawanna Bell—a Wrightsville prison inmate—gave birth to T.C. Appellant, who is both Ms. Bell's husband and T.C.'s legal father, wanted to care for T.C., but he tested positive for illegal drugs. Additionally, his criminal history included convictions for (1) raping a five-year-old female relative when he was a teenager; (2) failing to register as a sex offender; (3) manufacturing and possessing a controlled substance; and (4) possession of a firearm.

SLIP OPINION

On November 29, 2012, appellee, the Department of Human Services, (DHS) filed a petition for emergency custody of T.C. because her mother was incarcerated, her father—appellant—was a registered sex offender, and there were no other appropriate legal caretakers willing to provide care for her. The case proceeded, and T.C. was adjudicated dependent-neglected four months after the initial custody petition. The circuit court, given appellant's criminal history, declined to place custody of T.C. with appellant, stating,

> [Appellant] was not—and is still not—appropriate to take [T.C.] into his physical custody because he is a sex offender who is on parole, the conditions of which required that he is not to be around children and not to be around any women with children.

In its disposition order filed on January 16, 2013, the circuit court ordered T.C. to remain in DHS's custody and made guardianship and reunification with Ms. Bell concurrent case goals. On May 16, 2013, the circuit court reviewed the case, ordered T.C. to remain in DHS's custody, and made no case-goal changes.

On August 22, 2013, the circuit court again reviewed the case, after which it ordered T.C. to remain in DHS's custody, and maintained the same concurrent case goals. But the circuit court also made a finding that appellant had threatened DHS personnel, and the circuit court questioned why no request for visitation suspension had been sought:

> [Appellant] did visit [T.C.] until July 22, 2013, when, during [Ms. Bell's] visitation, he threatened the safety of certain DHS personnel. DHS not [sic] allowed him to visit since July 23, 2013, which was his scheduled visitation date. The Court cannot understand why the DHS attorney did not file an ex parte motion to suspend visitation until at least today's date.

SLIP OPINION

The circuit court suspended appellant's visitation with T.C. until further order of the court and expressed serious concerns about appellant's "mental health condition and his propensity for threatening behavior."

On November 7, 2013, the circuit court conducted a permanency-planning hearing. The circuit court found in its resulting order that, since the last hearing, appellant had been incarcerated[1] and remained an inappropriate placement for T.C. because of his sex-offender status. At that time, the case goal was changed to adoption, authorizing DHS to file a petition to terminate appellant's parental rights. The petition to terminate was filed as to both appellant and Ms. Bell on November 26, 2013. As to appellant, the petition referenced not only his sex-offender status, but also his parole violation by being in the home with the juvenile, safety concerns due to his violent behavior and threats to DHS staff, and lack of stable employment or housing.

On February 20, 2014, the circuit court heard DHS's termination petition, and the matter was taken under advisement. On March 21, 2014, DHS's petition was granted as to both parents, the order stating in pertinent part that appellant failed to remedy issues that arose subsequent to T.C.'s removal by DHS—citing his status as a sex offender, criminal history, threatening behavior toward DHS during this case, and continued incarceration—and also that appellant's sentence of nine months constituted a substantial period of T.C.'s life. On April 3, 2014, appellant filed his timely notice of appeal.

---

[1]Eight months into the case, appellant began a nine-month sentence for a parole violation. He was still incarcerated at the time of the termination hearing in March 2014, scheduled potentially to be released two months after that hearing.

SLIP OPINION

We review termination–of–parental–rights cases de novo. *Jones v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 717. Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents. *Watson v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 28. DHS must prove by clear and convincing evidence—that degree of proof that will produce in the finder of fact a firm conviction as to the allegation sought to be established—that it is in a child's best interest to terminate parental rights, as well as the existence of at least one statutory ground for termination. *Jones*, *supra*. In determining the best interest of the juvenile, a circuit court must take into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. *Id*. When the burden of proof is clear and convincing evidence, the inquiry on appeal is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous; a finding is clearly erroneous when, although there is evidence to support it, the appellate court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Watson*, *supra*. However, we give a high degree of deference to the circuit court, as it is in a far superior position to observe the parties before it and judge the credibility of the witnesses. *Jones*, *supra*.

A court may order termination of parental rights if it finds that there is an "appropriate permanency placement plan" for the child, Ark. Code Ann. § 9-27-341(b)(1)(A) (Supp. 2013), and further finds by clear and convincing evidence that termination is in the best

interest of the child, taking into consideration the likelihood of adoption and the potential harm to the health and welfare of the child that would be caused by returning him or her to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A).[2] Finally, there must be clear and convincing evidence supporting one or more of the grounds for termination listed in section 9-27-341(b)(3)(B).

In this case, DHS alleged two grounds against appellant, both of which were included in the findings by the circuit court: (1) that appellant failed to remedy issues that arose subsequent to T.C.'s removal by DHS, and (2) that appellant's sentence of nine months constituted a substantial period of T.C.'s life.

Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii) provides what is often referred to as the "subsequent factors" ground. It allows for termination of parental rights if it is in the best interest of the child, and

> [t]hat other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that return of the juvenile to the custody of the parent is contrary to the juvenile's health, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factor or rehabilitate the parent's circumstances that prevent return of the juvenile to the custody of the parent.

In the petition and termination order, DHS and the circuit court referenced appellant's status as a sex offender as part of the "subsequent factors" preventing reunification.

---

[2]Appellant does not contest the circuit court's findings regarding the two "best interest" factors—adoptability and potential harm. Accordingly, this argument is abandoned, *see Benedict v. Ark. Dep't of Human Servs.*, 96 Ark. App. 395, 242 S.W.3d 305 (2006), and no best-interest finding can be considered erroneous. *Anderson v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 522, 385 S.W.3d 367.

SLIP OPINION

Appellant argues that his sex-offender status is wholly irrelevant to this particular ground because his status did not arise "subsequent to the filing of the original petition for dependency-neglect," which is what this provision addresses. Appellant's sex-offender status was, in part, the *initial* cause of T.C.'s removal, and he submits that there is a separate ground that addresses a failure to remedy initial causes of removal, although DHS did not pursue termination of appellant's parental rights on that ground. *See Jones v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 632 (holding that courts may not alter or disregard the language of a legislatively enacted ground for termination, and if the ground, as worded, does not fit the facts of the case, it should not be used).

We disagree and hold that the circuit court's subsequent-factors finding was not clearly erroneous. Although appellant's bad deeds with respect to his sex-offender status occurred prior to this case, his threats to DHS personnel's safety did not. Appellant "threatened to blow up the DHS building," and for the next several days thereafter, he made more violent threats. The evidence presented indicated, and appellant admitted, that as a teenager, he contracted a sexually transmitted disease "from one of the women he had been fooling around with ...." This made him angry, and in response and out of admitted hate, he raped his five-year-old relative. He served eleven years' imprisonment on the rape conviction, and afterward he had other criminal convictions, including gun charges, drug charges, and theft of property. Appellant's admitted criminal history provides context for his present-day threats against DHS, and his historically violent behavior highlights the seriousness of his present-day threats. The circuit court expressed, on multiple occasions,

concern over appellant's "mental health condition and his propensity for threatening behavior." Appellant's behavior during the case constituted a factor arising subsequent to the filing of the original petition and made it contrary to T.C.'s best interest to return to appellant.

T.C. entered foster care on November 26, 2012, when she was six days old. Appellant was incarcerated at the end of July 2013 for a parole revocation. At the time of the termination hearing on February 20, 2014, appellant was not expected to be released until at least May 2014. More importantly, appellant did not have a viable plan for himself upon his release from prison regarding stable housing or employment. Appellant's incarceration and lack of a viable plan upon his release were additional issues that arose subsequent to the filing of the original petition and made it not only inadvisable to place T.C. in appellant's custody but also impossible to do so. *See Friend v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 606, 344 S.W.3d 670. It was not error to terminate appellant's parental rights "in light of [appellant's] obvious inability to provide a stable home for [the child] within a time frame consistent with his development . . . or within a reasonable period of time viewed from [the child's] perspective." *Id.* (internal citations omitted).

In addition to appellant's incarceration, appellant remained in a committed relationship with T.C.'s mother, Ms. Bell. Toward the end of the case, at the permanency-planning hearing, when the goal changed to adoption, Ms. Bell stated that she intended to separate from appellant, but the DHS worker doubted Ms. Bell's statement and believed they would remain in a relationship. Despite Ms. Bell's incapacity to provide for T.C., appellant

decided to remain in a relationship with her. Ms. Bell, throughout the case, was never fit to obtain custody of T.C., and her rights were eventually terminated because she could not provide the necessary care for T.C. Ms. Bell did not appeal the termination of her parental rights. This court has affirmed termination cases where a parent continued to have contact with someone who adversely impacted the family's stability or welfare. *See Cariker v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 574, 385 S.W.3d 859; *Tadlock v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 841, 372 S.W.3d 403.

Appellant's status as a sex offender is also important and relevant because his status prohibited him from having unsupervised contact with children. Appellant's decision to remain married to Ms. Bell left Ms. Bell as the person who would have to supervise appellant's contact with T.C. There was concern that Ms. Bell did not fully appreciate the gravity of appellant's status as a sex offender, and accordingly that she would not sufficiently protect T.C. The testimony was that Ms. Bell was "not up to the task of providing supervision for [appellant]. . . ." DHS made a referral for appellant regarding his sex-offender status, but he did not follow up on those services.

We hold that the circuit court properly terminated appellant's parental rights under section 9-27-341(b)(3)(B)(vii)(a) and that DHS proved that (1) other factors or issues arose subsequent to the filing of the original petition; (2) those factors made it contrary to the juvenile's health, safety, or welfare for the juvenile to be returned to the parent; and (3) despite the offer of appropriate family services, the parent has manifested the incapacity or

indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances. *Id.*

Although appellant argues that DHS did not demonstrate that appropriate family services were offered to him, the record before us does not reflect that he raised this argument before the circuit court. This court has repeatedly stated that it will not address a reasonable-efforts argument raised for the first time on appeal. *Warren v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 469, 441 S.W.3d 72; *see also Landis-Maynard v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 673, 386 S.W.3d 641; *Kelley v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 481; *Friend*, *supra*. Appellant is therefore barred from making this argument now for the first time on appeal.

Because only one statutory ground is necessary for termination of parental rights pursuant to section 9-27-341(b)(3)(B), we need not address appellant's argument regarding the other ground for termination. *See Tankersley v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 109, 389 S.W.3d 96.

Affirmed.

Virden and Hixson, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Tabitha Baertels McNulty*, Office of Policy and Legal Services, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.