LARRY D. VAUGHT, Judge
Bobby Bolden appeals after the Pope County Circuit Court entered an order terminating his parental rights to his sons, N.B. (born 9-3-15) and L.B. (born 4-5-14). On appeal, Bolden challenges the sufficiency *131 of the evidence supporting the circuit court's findings that the Arkansas Department of Human Services (DHS) proved statutory grounds and that termination was in the best interest of the children. Bolden also argues that the circuit court's termination decision is fundamentally unfair. We affirm.
On December 1, 2015, DHS exercised a seventy-two-hour hold on N.B. and L.B. On the same date, DHS filed a petition for emergency custody and dependency-neglect seeking to remove the children from the custody of their mother, Crystal Griffin, due to her drug use and the physical abuse of the children while in her care.[1] Bolden, the putative father of N.B. and L.B., was incarcerated at the time. The circuit court entered an emergency order on December 3, 2015, and a probable-cause order was entered on December 16, 2015. An adjudication order was entered on January 11, 2016,[2] wherein the circuit court found the children were dependent-neglected based on parental unfitness due to Griffin's drug use and her failure to protect the children. The court further found that Bolden had not presented evidence that he had established significant contacts with the children; therefore, putative-parent rights did not attach. The goal of the case was reunification.
A review-hearing order was entered on March 18, 2016,[3] in which the court found that Bolden is the legal father of N.B. and L.B. The order further directed Bolden to submit to random drug screens; attend and complete parenting classes; obtain and maintain stable and appropriate housing and employment; and maintain weekly contact with DHS. The goal of the case continued to be reunification. A second review-hearing order was entered on June 13, 2016. This order reordered Bolden to comply with the same case plan. The goal of the case continued to be reunification. A third review-hearing order was entered on August 29, 2016. The court reiterated the case-plan directives for Bolden. The court also directed DHS to initiate an ICPC home study on Bolden. The goal of the case continued to be reunification.
On November 28, 2016, a permanency-planning hearing was held. In addition to the previously ordered services, the court ordered Bolden to provide DHS with proof of employment and be available for random drug testing. The goal of the case continued to be reunification. On December 5, 2016, the circuit court entered an order appointing special advocates (CASA).
A second permanency-planning hearing was held on January 23, 2017. As it relates to Bolden, the court restated its case-plan directives. The goal of the case was changed to termination and adoption, and a termination hearing was scheduled.
On February 27, 2017, DHS filed a petition for termination of parental rights against both Griffin and Bolden. DHS alleged that termination was in the best interest of N.B. and L.B. and that several grounds supported termination under Arkansas Code Annotated section 9-27-341(b)(3)(B) (Supp. 2017), including the failure-to-remedy, subsequent-factors, and failure-to-maintain-meaningful-contact grounds.
*132 A hearing on the termination petition was held on April 24, 2017. DHS caseworker Milissa Ennis testified that Bolden was incarcerated when N.B. and L.B. were placed in DHS custody in December 2015, was released in February 2016, and was reincarcerated in late January 2017. She said that he was expected to be released in June 2017.
Ennis further testified that Bolden had sporadic employment during the case. She also stated he completed parenting classes and maintained "somewhat" stable housing. She said that after he was released from prison in February 2016, he lived in Pope County from February to May 2016, moved to Union County where he lived from May to July 2016, moved to Louisiana where he lived from July to October 2016, and moved back to Pope County where he lived from October 2016 to January 2017. She said he was reincarcerated in January 2017 for failure to pay court-ordered child support.[4]
Ennis reported that Bolden tested positive for opiates and THC on May 4, 2016, and that he had a prescription for hydrocodone at that time; he was positive for opiates and THC on June 13, 2016; he had negative drug screens on June 20 and 30, 2016; he was positive for oxy and methadone on December 20, 2016; and he was negative for drugs on December 30, 2016.
Ennis testified that Bolden attended only fifteen of forty-one scheduled visits with N.B. and L.B. and that there were big gaps in time when Bolden did not visit the children at all. She said that his last visit with the children was on December 30, 2016. Ennis stated that when Bolden did visit the children, the visits went well. Finally, Ennis testified that N.B. and L.B. were adoptable and that they lacked medical or behavioral issues that would prevent them from being adopted.
Bolden testified that at the onset of this case, he had been incarcerated on a drug charge and was released on February 1, 2016. He said that he was later prosecuted and found guilty of failing to pay court-ordered child support for his two older children in the amount of $18,000 to $20,000 for which he received a ten-year-probation sentence. He testified that he absconded from probation when he moved to Louisiana without permission but that he did not know he was not permitted to leave Arkansas. Instead of having his probation extended, he elected to serve two years' imprisonment. He testified that he chose prison because DHS asked him to take care of his legal problems. Bolden added that he was currently under an order to pay the child-support arrearage at the rate of $200 per month and that he planned to start paying it back upon his release from prison.
Bolden also stated that upon his release from prison in February 2016, he met a "wonderful girl," Katie Percy. He moved from Pope County to Union County for Percy, and they decided together to move to Louisiana where Percy's family was living and because there were better job opportunities for them there. He stated that he worked on a farm and Percy worked as a teacher and that they had a house there that was being held for them upon their return to Louisiana. He stated that Percy has had a positive effect on his life and that he no longer desired to "run the streets." He said that Percy's family are "good Christian people" who accept his past and love him. He stated that Percy attended visits with him and that N.B. and L.B. immediately accepted her. Bolden said that he requested a home study on his Louisiana home, but because it took so *133 long, he and Percy decided to return to Arkansas to be closer to the children.
Bolden told the court that he expected to be released from prison in late May 2017. He said he planned to marry Percy upon his release and that he and Percy are expecting a child. He planned to live with his grandparents in Pope County if he is able to continue working toward reunification with his children. He said that if this case does not go in his favor, he plans move to Louisiana with Percy and go back to work on the farm.
Bolden testified that he was not appointed an attorney until the goal of the case changed to termination of parental rights and that he believed he would have made better progress in this case if he had been appointed an attorney earlier. He testified that he wanted custody of N.B. and L.B. and that he wants them to be raised with their brothers.[5] He said that he was "done with drug use" and that Percy is his incentive not to relapse. Percy did not testify.
At the conclusion of the hearing, the circuit court orally granted DHS's petition and terminated Bolden's parental rights, finding that termination was in the best interest of the children and taking into consideration the likelihood of adoption and the potential harm posed by returning them to Bolden. The court also concluded that DHS proved the failure-to-maintain-meaningful-contact and subsequent-factors grounds. In support of its conclusions, the circuit court found that Bolden had been given sixteen months to comply with the case plan and was unable to assume custody of the children. He was incarcerated at the beginning of the case for one reason and was incarcerated at the end of the case for another. The court found that he was dependent on Percy for housing and that there was nothing legally binding them together. The court stated that "[i]f at any moment [Bolden] messes up ... he runs the risk of being told 'Pick up your stuff, goodbye.' " The court found that this was a "very tenuous, very unstable situation and these children need permanence." The court found that N.B. had spent most of his life in foster care and that L.B. had spent almost half of his life in foster care. The circuit court found that it could not make the children wait forever. On May 9, 2017, the court entered an order terminating Bolden's parental rights. Bolden's appeal followed.[6]
A circuit court's order terminating parental rights must be based on findings proved by clear and convincing evidence. Krecker v. Ark. Dep't of Human Servs. , 2017 Ark. App. 537, at 10, 530 S.W.3d 393, 400 (citing Ark. Code Ann. § 9-27-341(b)(3) (Repl. 2015) ). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. Id. , 530 S.W.3d at 400. On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. Id. , 530 S.W.3d at 400. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. , 530 S.W.3d at 400. In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to judge the credibility of witnesses. Id. , 530 S.W.3d at 400. The appellate court *134 is not to act as a "super factfinder," substituting its own judgment or second-guessing the credibility determinations of the circuit court; we reverse only in those cases in which a definite mistake has occurred. Harris v. Ark. Dep't of Human Servs. , 2015 Ark. App. 508, at 7, 470 S.W.3d 316, 320.
In order to terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). The order terminating parental rights must also be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). Only one ground must be proved to support termination. Krecker , 2017 Ark. App. 537, at 10, 530 S.W.3d at 400.
The circuit court found that Bolden's reincarceration, lack of stable housing, and lack of employment support the subsequent-factors finding. The subsequent-factors ground requires
[t]hat other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.
Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(a) .
In this case, subsequent to the filing of the dependency-neglect petition, Bolden was released from prison, was reincarcerated, and had no stable plan in place upon his release. In Conway v. Arkansas Department of Human Services , 2015 Ark. App. 30, at 7, 453 S.W.3d 703, 707, we held that the appellant's incarceration and lack of a viable plan upon his release were issues that arose subsequent to the filing of the original petition and made it not only inadvisable to place his child in his custody but also impossible to do so.
Also, subsequent to the filing of the dependency-neglect petition, Bolden violated court orders by failing three drug tests, failing to secure stable housing and employment, failing to visit his children, failing to pay child support, and violating his probation. In Cotton v. Arkansas Department of Human Services , 2012 Ark. App. 455, at 11, 422 S.W.3d 130, 138, this court affirmed the circuit court's termination decision, pursuant to the subsequent-factors ground, where the evidence demonstrated that the appellant failed to comply with the case plan and court orders and failed to obtain stable housing, employment, or income.
Finally, subsequent to the filing of the dependency-neglect petition, Bolden tested positive for illegal drugs on multiple occasions. In Henderson v. Arkansas Department of Human Services , 2010 Ark. App. 191, at 11-12, 377 S.W.3d 362, 368, we affirmed the circuit court's termination decision based on the subsequent-factors ground because the evidence demonstrated that the appellant used drugs during the case; she committed drug-related crimes after her child was taken into DHS custody; she failed to follow court orders during much of the case; and she failed to have *135 appropriate housing or employment more than one year into the case. Based on the case law and the facts in the instant case, we hold that the circuit court did not clearly err in finding that the subsequent-factors ground supported the termination decision.
Bolden argues that his failure to secure housing and employment was due to being incarcerated. Citing Bush v. Dietz , 284 Ark. 191, 680 S.W.2d 704 (1984), and Zgleszewski v. Zgleszewski , 260 Ark. 629, 542 S.W.2d 765 (1976), he contends that although imprisonment imposes an unusual impediment to a normal parental relationship, our supreme court has held that it is not conclusive on the termination issue. These cases are inapplicable to the case at bar because they were decided under the adoption statutes. Nevertheless, this proposition has been applied to termination-of-parental-rights cases.
In Crawford v. Arkansas Department of Human Services , 330 Ark. 152, 157, 951 S.W.2d 310, 313 (1997), our supreme court held that imprisonment is not conclusive on the termination issue. However, our supreme court has also stated that a parent's imprisonment does not toll a parent's responsibilities toward his or her children. Malone v. Ark. Dep't of Human Servs. , 71 Ark. App. 441, 447, 30 S.W.3d 758, 762 (2000). Tolling a parent's obligations to comply with reunification orders while they are in jail would be contrary to the goal of the juvenile code to provide permanency for the children. Id. , 30 S.W.3d at 762. The appropriate inquiry when a parent has been ordered to comply with a court's reunification orders and is incarcerated is whether the parent utilized those resources available to maintain a close relationship with the children. Id. at 447-48, 30 S.W.3d at 762.
In the instant case, the circuit court did not terminate Bolden's rights solely because he was reincarcerated. His parental rights were terminated based on subsequent factors-as set forth above-that not only included his January 2017 reincarceration but also included evidence of his conduct during the eleven months that he was not incarcerated. This evidence included three positive drug tests; fifteen of forty-one visits with his children; no visits with his children since December 30, 2016; no stable housing or employment; no payments toward his court-ordered child support; probation for failing to pay the child support; and violation of his probation.
Bolden also argues that the circuit court failed to properly weigh his testimony that (1) he did not know that he was not permitted to move to another state without permission; (2) he elected the two-year prison sentence instead of extending his probation because DHS asked him to "take care of my legal stuff"; and (3) he had a postprison plan in place-marry Percy, remain drug-free, pay his $200 per month child-support arrearage, and get a job and housing-which would remedy his lack of housing and employment. It was for the circuit court to determine whether Bolden gave credible reasons for not complying with its orders and for violating other court orders and probation conditions. It was for the circuit court to determine whether Bolden's postprison plan was credible. Bolden's argument here hinges on his credibility as a witness, and we give great deference to the circuit court on credibility issues. Posey v. Ark. Dep't of Health & Human Servs. , 370 Ark. 500, 509, 262 S.W.3d 159, 167 (2007). And we note that Percy did not testify at the hearing.
Under this point, Bolden lastly argues that there is no evidence in the record to demonstrate that he did not comply with services; therefore, there is no evidence that he demonstrated incapacity or *136 indifference to rehabilitate his circumstances as required by section 9-27-341(b)(3)(B)(vii)(a) . He claims that he completed parenting classes and was randomly drug tested. He points to his decision to return to prison in January 2017 as evidence that he complied with DHS's request that he "take care of [his] legal stuff." Again, these arguments hinge on Bolden's credibility as a witness. We give great deference to the circuit court on credibility issues. Posey , 370 Ark. at 509, 262 S.W.3d at 167.
In conclusion, we hold that the circuit court did not clearly err in finding that DHS met its burden of proving the subsequent-factors grounds, and we affirm on this point. Because we hold that this ground was sufficient to support the termination of Bolden's parental rights, and only one ground is required, we do not address the failure-to-maintain-meaningful-contact ground. McElroy v. Ark. Dep't of Human Servs. , 2014 Ark. App. 117, at 10-11, 432 S.W.3d 109, 116.
Bolden next argues that the circuit court erred in finding that termination of his parental rights was in the best interest of N.B. and L.B. He does not challenge the adoptability finding. His challenge is limited to the potential-harm finding.
In assessing the potential-harm factor, the court is not required to find that actual harm would ensue if the child were returned to the parent or to affirmatively identify a potential harm. Krecker , 2017 Ark. App. 537, at 12, 530 S.W.3d at 401. The potential-harm analysis is to be conducted in broad terms. Id. , 530 S.W.3d at 401. Past actions of a parent over a meaningful period of time are good indicators of what the future may hold. Id. , 530 S.W.3d at 401.
The court's finding that Bolden lacked stable housing supports the best-interest finding. "[T]his court has stated, time and time again, that a failure to provide appropriate housing is contrary to the best-interest of the children." Selsor v. Ark. Dep't of Human Servs. , 2017 Ark. App. 182, at 6, 516 S.W.3d 314, 318 (citations omitted). A stable home is one of a child's most basic needs, and that cannot be ignored. Id. , 516 S.W.3d at 318 (citing Latham v. Ark. Dep't of Health & Human Servs. , 99 Ark. App. 25, 33, 256 S.W.3d 543, 548 (2007) ).
Furthermore, Bolden's continued drug use during the case supports the circuit court's best-interest finding. Allen v. Ark. Dep't of Human Servs. , 2011 Ark. App. 288, at 10, 384 S.W.3d 7, 12 ; Welch v. Ark. Dep't of Human Servs. , 2010 Ark. App. 798, at 9, 378 S.W.3d 290, 295. In addition to testing positive for drugs and failing to secure stable housing, Bolden also failed to secure employment and to visit his children regularly. He violated his probation by moving out of state without permission. He was incarcerated at the time of the termination hearing. He claims he has a plan for housing, employment, marriage, and repayment of his child-support arrearage upon his release from prison, but the circuit court found that his plan was based entirely on the "good graces" of Percy and was a "very tenuous, very unstable situation." This evidence illustrates that Bolden's behavior over the course of this sixteen-month case does not show enough stability to render clearly erroneous the circuit court's finding that he posed a risk of potential harm to N.B. and L.B.
Bolden's reliance on Bunch v. Arkansas Department of Human Services , 2017 Ark. App. 374, 523 S.W.3d 913, and Cranford v. Arkansas Department of Human Services , 2011 Ark. App. 211, 378 S.W.3d 851, is misplaced. In Cranford , the child, after being removed from his parents' custody, *137 was placed in his maternal grandparents' custody, where he lived before the case began and who had significant influence in his life before and after DHS became involved. Cranford , 2011 Ark. App. 211, at 9, 378 S.W.3d at 856. Likewise, in Bunch , the children, after being removed from their parents' custody, were placed in their maternal grandmother's custody, where they remained throughout the case. Bunch , 2017 Ark. App. 374, at 9-10, 523 S.W.3d at 919. In both cases, we held that the circuit court clearly erred in finding that termination of parental rights was in the best interest of the children because there was no urgency for permanency and stability-whether or not termination occurred, the children would remain in the custody of their grandparents in the same place they had lived since being removed from their parents' custody. Id. , 523 S.W.3d at 919 ; Cranford , 2011 Ark. App. 211, at 11, 378 S.W.3d at 857.
These facts are absent in the case at bar. The evidence here reveals that while N.B. and L.B. were initially placed in the custody of their maternal grandparents, the grandparents subsequently advised DHS that they were no longer able to care for the children. The children were placed in foster care and have stayed there the remainder of the case. The court found that N.B. had spent most of his life in foster care and that L.B. had spent almost half of his life in foster care and that both children needed permanence. Therefore, Bunch and Cranford are distinguishable. We affirm the circuit court's best-interest finding.
Lastly, Bolden argues that the circuit court's termination decision deprived him of fundamental fairness. He contends that there is a "blank record" on appeal in that he had practically identical requirements placed on him from April 2016 to January 2017, and that there is no mention of his compliance, or lack thereof, in court orders. He argues that the petition for termination was the first and only notice of his failures to achieve reunification in the case and that a parent cannot be faulted for lack of compliance when he never had notice of what he was supposed to comply with and never had an opportunity to challenge or defend against findings that he was not in compliance. He further contends that there were no staffings after CASA was appointed or in the four months prior to the termination hearing, which is a violation of the Division of Children and Family Services policy.
We need not reach the merits of Bolden's fundamental-fairness argument because it was not raised below; therefore, it is not preserved for appeal. It is well settled that with the notable exception of matters involving subject-matter jurisdiction, we will not consider an issue raised for the first time on appeal, even when the issue is a matter of constitutional magnitude. Potterton v. Ark. Dep't of Human Servs. , 2017 Ark. App. 454, at 4, 527 S.W.3d 769, 772 (citing Maxwell v. Ark. Dep't of Human Servs. , 90 Ark. App. 223, 234, 205 S.W.3d 801, 808 (2005) ).
For the above-stated reasons, we affirm the circuit court's termination order.
Affirmed.
Gruber, C.J., and Harrison, J., agree.

The affidavit attached to the petition states that the perpetrator of the physical abuse was Griffin's boyfriend, Jonathan Smith.

The record reflects that Bolden was incarcerated and did not attend the hearing.

Bolden had been released from prison in February 2016, and according to the testimony of the DHS caseworker, he attended the March 2016 review hearing.

Bolden has two older children who live with their mother, Bolden's ex-wife.

Bolden is referring to his two older sons and the son he is expecting with Percy.

Griffin's parental rights were also terminated in the May 9, 2017 order; however, she is not a party to this appeal.