Cite as 2020 Ark. App. 13

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-19-633

| | |
|---|---|
| | Opinion Delivered January 15, 2020 |
| NATHAN FOX | APPEAL FROM THE WASHINGTON |
| APPELLANT | COUNTY CIRCUIT COURT |
| | [NO. 72JV-17-717] |
| V. | |
| | HONORABLE STACEY |
| ARKANSAS DEPARTMENT OF | ZIMMERMAN, JUDGE |
| HUMAN SERVICES AND MINOR | |
| CHILDREN | |
| APPELLEES | AFFIRMED |

## BRANDON J. HARRISON, Judge

The Washington County Circuit Court terminated the parental rights of Nathan Fox to his three children, NF, AF1, and AF2. On appeal, Fox argues that the termination order should be reversed because he was denied his statutory right to counsel. We affirm the circuit court's order.

On 18 September 2017, the Arkansas Department of Human Services (DHS) petitioned for emergency custody of nine-month-old NF, eight-year-old AF1, and twelve-year-old AF2. The supporting affidavit explained that on September 16, DHS exercised emergency custody of NF after her mother, Angela Terry, had been arrested.[1] That same day, DHS visited the family home. Nathan was present with AF1 and AF2, and DHS exercised emergency custody of the children after finding the home unsuitable for children.

---

[1]Terry's parental rights to the children have also been terminated, but she is not a party to this appeal.

The affidavit stated, "Legal custody was removed [from] Angela Terry and physical custody was removed from Nathan Fox[.]" The petition identified Terry as the children's mother and Fox as the putative father. The circuit court entered an ex parte order for emergency custody on September 18; that order recited, "The parent(s) or guardian(s) have a right to an attorney at each stage of the proceedings. Legal assistance may be obtained by retaining private counsel, contacting Legal Services . . . or if indigent, requesting the Court to appoint legal counsel."

The probable-cause order, entered on September 19, appointed counsel for Terry and ordered her to maintain contact with her attorney. The order also ordered Fox to "take appropriate steps to resolve the issue of paternity by submitting to a DNA test." The court found that Fox was indigent and ordered DHS to pay for the DNA testing. On October 18, the court entered an order of paternity finding that Fox is the "biological and legal father" of all three children.

On October 20, the circuit court adjudicated the children dependent-neglected based on environmental neglect and parental unfitness. The court reiterated that Terry was required to maintain contact with her attorney, but no mention was made of Fox. The court made a specific finding that both parents were indigent. A review order on 14 February 2018 did not list an attorney for Fox in the caption, but a review order on June 15 and a permanency-planning order on September 6 indicated that Fox was proceeding pro se.

On 3 January 2019, the circuit court entered a fifteen-month permanency-planning order and changed the goal of the case from reunification to authorizing a plan of adoption

2

with DHS filing a petition for termination of parental rights. That order stated, "Having set the goal to be adoption, the Court has determined that the legal parent father has not yet been appointed counsel and requests appointment of counsel today, and the Court determines the parent father IS indigent and counsel IS appointed for the parent father[.]" The court convened a termination hearing on April 19; at the start of the hearing, DHS introduced twenty exhibits, including prior orders, reports, and an acknowledgment of paternity executed by both Terry and Fox at the time of each child's birth. On 28 May 2019, the circuit court entered an order terminating Fox's parental rights.

A circuit court's order that terminates parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2017); *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Clear and convincing evidence is proof that will produce in the fact-finder a firm conviction on the allegation sought to be established. *Dinkins*, *supra*. On appeal, we will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id*.

On appeal, Fox does not challenge the statutory grounds for termination or the circuit court's best-interest determination. Instead, Fox argues that he was denied his right to timely appointed counsel, which "tainted the entire dependency-neglect case" and warrants reversal of the termination.

Arkansas Code Annotated section 9-27-316(h) (Supp. 2017) provides,

> (1)(A) All parents and custodians have a right to counsel in all dependency-neglect proceedings.

(B) In all dependency-neglect proceedings that set out to remove legal custody from a parent or custodian, the parent or custodian from whom custody was removed shall have the right to be appointed counsel, and the court shall appoint counsel if the court makes a finding that the parent or custodian from whom custody was removed is indigent and counsel is requested by the parent or custodian.

(C)(i) Parents and custodians shall be advised in the dependency-neglect petition or the ex parte emergency order, whichever is sooner, and at the first appearance before the court, of the right to counsel and the right to appointed counsel, if eligible.

(ii) As required under § 9-27-314, a circuit court shall appoint counsel in an ex parte emergency order and shall determine eligibility at the commencement of the probable cause hearing.

(D) All parents shall have the right to be appointed counsel in termination of parental rights hearings, and the court shall appoint counsel if the court makes a finding that the parent is indigent and counsel is requested by the parent.

Arkansas Code Annotated section 9-27-341(b)(3)(B)(i) provides that the circuit court "shall appoint counsel for the parent or custodian from whom legal custody was removed in the ex parte emergency order." A "[p]arent" is defined as "a biological mother, an adoptive parent, or a man to whom the biological mother was married at the time of conception or birth or who has signed an acknowledgment of paternity pursuant to § 9-10-120 or who has been found by a court of competent jurisdiction to be the biological father of the juvenile." Ark. Code Ann. § 9-27-303(40) (Supp. 2017). Finally, Ark. Code Ann. § 9-10-120(a) (Repl. 2015) states, "A man is the father of a child for all intents and purposes if he and the mother execute an acknowledgment of paternity of the child pursuant to § 20-18-408 or § 20-18-409, or a similar acknowledgment executed during the child's minority."

Fox asserts that based on the acknowledgments of paternity executed when the children were born, he is a "parent" and has been the legal father of the children from the outset of the case, so it was error for the circuit court to fail to appoint him counsel. Fox contends that DHS's failure to name him as the legal father at the outset is not controlling and that "[t]he Code does not excuse the court for failing to do its due diligence. Neither does section 9-10-120 state that the acknowledgment is only valid if the court knows about it."

In support, Fox cites *Buck v. Arkansas Department of Human Services*, 2018 Ark. App. 258, 548 S.W.3d 231, and *Basham v. Arkansas Department of Human Services*, 2015 Ark. App. 243, 459 S.W.3d 824. In *Buck*, the father and mother were married, and DHS removed the children from their custody. The emergency-custody order found that the mother was entitled to appointed counsel but made no such finding as to Buck, and the circuit court adjudicated the children dependent-neglected based on the mother's stipulation. Buck requested counsel repeatedly but was not appointed counsel until the goal of the case was changed to termination of parental rights. After his rights were terminated, Buck appealed, arguing that he had been denied his statutory right to counsel. DHS did not challenge his assertion; instead, it argued that the failure to appoint counsel earlier in the proceedings was harmless error. This court reversed and remanded, recognizing that Buck had been entitled to counsel from the outset of the dependency-neglect proceeding under Arkansas law and that the failure to appoint him counsel was not harmless error (specifically noting that Buck had not stipulated that the children were dependent-neglected).

In *Basham*, an incarcerated mother requested an attorney via letter, and the letter was read into evidence at the termination hearing. The termination hearing proceeded, however, and Basham's rights were terminated. This court reversed and remanded, holding that the circuit court had erred as a matter of law when it failed to determine the mother's indigency status and appoint an attorney to represent her upon request for counsel for the termination proceeding as required by Ark. Code Ann. § 9-27-316(h)(1)(D).

DHS first responds that Fox's argument is not preserved because he failed to raise the issue of lack of counsel in the fifteen months prior to the court's appointment of counsel and failed to raise the issue at the termination hearing. DHS disputes Fox's claim that he was unquestionably a legal custodian of the children from the outset of the case. And because Fox did not raise the issue and give the circuit court an opportunity to rule on the issue, this court has no record on which to determine whether he was entitled to appointed counsel in the pretermination proceedings.

Second, DHS contends that even if Fox was entitled to counsel earlier in the case, the termination order should be affirmed because he was represented by counsel and participated meaningfully in the termination hearing. *See Briscoe v. State, Ark. Dep't of Human Servs.*, 323 Ark. 4, 912 S.W.2d 425 (1996) (holding that the error of failing to provide counsel in earlier hearings was cured by the provision of counsel in the final hearing in which the entire case against Ms. Briscoe was presented). DHS also argues that Fox has failed to demonstrate how, if at all, failing to appoint him counsel earlier harmed him considering his failure to comply with the case plan and the unchallenged best-interest and statutory-grounds findings. DHS distinguishes *Buck* by noting that the father in that case

6

had requested an attorney earlier in the case and that, unlike Buck, Fox stipulated to the children's dependency-neglect adjudication. DHS also notes that *Basham* does not conflict with the present case because Fox was given the due-process protection that was denied to Basham—representation by counsel at the termination hearing.

We affirm the circuit court's order. Contrary to Fox's assertion, the children were not removed from his legal custody. He and the mother were not married, and he was correctly identified as the putative father. Fox appears to argue that it was the court's responsibility to research his parental status, but he cites no authority for that argument. And instead of submitting the acknowledgments of paternity to the court, he submitted to a DNA test and was later found to be the children's "biological and legal father." At that point, he was entitled to counsel if requested, but he did not request counsel until the fifteen-month permanency-planning hearing, at which time the court granted his request. Thus, we hold that Fox has presented no meritorious basis for reversal.

Affirmed.

GRUBER, C.J., agrees.

VIRDEN, J., concurs.

### BART F. VIRDEN, Judge, concurring.

"Then you should say what you mean," the March Hare went on. "I do," Alice hastily replied; "at least—at least I mean what I say—that's the same thing, you know." "Not the same thing a bit!" said the Hatter. "You might just as well say that 'I see what I eat' is the same thing as 'I eat what I see'!" – The March Hare, the Hatter and Alice, *Alice's Adventures in Wonderland* by Lewis Carroll.

It seems like simple advice, saying what one means. For instance, when the Arkansas legislature made the following pronouncement in Arkansas Code Annotated section 9-27-

316(h)(1)(A) (Supp. 2019), one might have thought it was fairly clear and simple: all parents and custodians have a right to counsel in all dependency-neglect proceedings. One would be wrong.

I concur in the opinion we release today because I feel that we are compelled to reach the result based on the evolution of our caselaw in this area. I write separately, however, to point out that the caselaw is a result of our appellate decisions painting us into an analytical corner, or perhaps to be more geometrically correct in my metaphors, a circle. In a process that might well have been penned by Lewis Carroll, we examine the lack of an attorney for a parent in these proceedings thusly: Every parent is entitled to a lawyer during the entire proceeding . . . if the parent requests one. Every parent is to be notified of the right and the requirement that they make such a request . . . unless they did not have "legal" custody of the child(ren) at the time of removal, even if they have actual physical custody. And at this point, we start dissecting the term "legal custody." The terms "custody" and "legal custody" are not defined in the statutes, so even if the actual father was in actual custody of the child(ren) at the point of removal, he is not entitled to notice of his right to an attorney, and he cannot request an attorney be appointed for him unless there is a court order finding that he is a "parent" and he had "legal custody." As a result, he doesn't get notice of his right to ask for an attorney, so he doesn't have an attorney to advise him of his rights. And then at the tail end of the case, when it is too late, when the rights as parents are being terminated, he gets a lawyer, and we say, "that's good enough." We say, "You can't complain about not having a lawyer because you didn't ask for one." "You didn't

know you could ask for one because the trial court didn't have to advise you of that." "Also, you didn't object to not having a lawyer, and you didn't have a lawyer to object for you."

My point being an inquiry: Why not just advise a parent or custodian from whom custody is removed that he or she may be entitled to a lawyer and what he or she needs to do to find out? If the parent or custodian is entitled to an attorney, then we will be able to avoid the pitfalls we recently warned against in *Buck v. Arkansas Department of Human Services*, 2018 Ark. App. 258, 548 S.W.3d 832.

The chronology of the case at bar is illustrative:

- 9/18/17: Ex parte order for custody. Paragraph 15 on page 5 of the order gives notice of the parent's or guardian's right to counsel and advises what they need to do to avail themselves of that right. Neither the order nor petition mentions Fox, even though there is evidence that the children referred to him as their dad and that they were living in the same house at the time of the removal. Not only did he have physical custody, but he was by definition a "parent" because he had executed acknowledgements of paternity for each child. There is no evidence that the ex parte order and the notice contained therein was served on or delivered to Fox.

- 9/19/17: Probable-cause hearing. Fox attended the hearing and was referred to as the "putative father." Angela Terry, the mother, was appointed counsel, and DNA testing was ordered for Fox. There is no mention of notice or a parent's right to counsel.

- 10/18/17: Order of paternity finding Fox to be the legal father of all three children.

- 10/20/17: Adjudication order is entered. Fox is referred to as the "legal father." The order mentions both parents are indigent but makes no other mention of an attorney for Fox.

9

At this point, rather than review each order and hearing, suffice it to say that Fox was not appointed an attorney until the "15 Month Permanency Planning Hearing Order" dated January 2, 2019, when the goal was changed to termination. He was legally recognized as the children's father one month after they were removed from his care, but he was not appointed an attorney for another fifteen months. Nowhere in the record before us is there any indication that he was ever advised of this right. In various orders he was referred to as "pro se" as if it were a choice he had made. Our supreme court has made it clear that parents must have a clear understanding of the pitfalls of "going it alone" without counsel. In fact, it is rather difficult for a parent to refuse counsel's assistance in termination–of–parental-rights cases. *See Jefferson v. Ark. Dep't of Human Servs*., 356 Ark. 647, 158 S.W.3d 129 (2004); *Bearden v. Ark. Dep't of Human Servs*., 344 Ark. 317, 42 S.W.3d 397 (2001).

To be clear, from the findings made by the trial court, there is every indication that Fox would not be a candidate for placement of the children. However, my concern is with the procedure and protection of the rights of parents. Our courts have recognized that "the deprivation of parental rights is in many ways similar to the deprivation of liberty at stake in criminal cases, as this court has previously compared termination proceedings with criminal proceedings in circumstances involving the right to counsel." *Jones v. Ark. Dep't of Human Servs*., 361 Ark. 164, 205 S.W.3d 778 (2005). Yet we have allowed the law to "evolve" to the point of questionable logic and, in my mind, real concerns such as those expressed in *Buck, supra*. The only apparent differences between the facts in *Buck* and the present case are that in *Buck*, the father had requested an attorney from DHS at some point before the appointment, and he and the mother were married at the time of the children's removal.

10

To restate the obvious, if Fox is never notified of his right to request counsel, should he be so severely penalized for not doing so? Do we simply leave it as a matter of chance that the parent will request an attorney? The solution is so simple. When the father is found to be the legal father and has custody of his children, notify him of his right to an attorney and what he has to do.

Do we believe that we are providing real protection of those due-process and statutory rights of parents that we cite as "fundamental" in nearly every termination-of-parental-rights case?

> "Contrariwise," continued Tweedledee, "if it was so, it might be; and if it were so, it would be; but as it isn't, it ain't. That's logic." –Tweedledee, *Alice's Adventures in Wonderland & Through the Looking-Glass* by Lewis Carroll.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.