Cite as 2020 Ark. App. 277

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-19-978

| | |
|---|---|
| JOSE CHACON<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN<br>SERVICES AND MINOR CHILDREN<br>APPELLEES | Opinion Delivered April 29, 2020<br><br>APPEAL FROM THE SEBASTIAN<br>COUNTY CIRCUIT COURT,<br>FORT SMITH DISTRICT<br>[NO. 66FJV-16-544]<br><br>HONORABLE LEIGH ZUERKER,<br>JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Jose Chacon appeals the Sebastian County Circuit Court order terminating his parental rights to his son JT. Chacon's sole argument on appeal is that he is an incarcerated parent whom the Arkansas Department of Human Services (DHS) "completely ignored" in this dependency-neglect case, and as a result, he was denied his constitutional due-process rights. While we are troubled by the facts of Chacon's case, we cannot reach the merits of his due-process argument because it is not preserved for appeal; therefore, we must affirm.

Danielle Terhune is the mother of SM (born December 3, 2010), TM (born June 14, 2013), and JT (born August 1, 2016). DHS became involved with Terhune's family at JT's birth when Terhune tested positive for THC. DHS conducted a team decision meeting with Terhune on August 4 and opened a protective-services case on the family on August 31. These actions were unsuccessful, and on November 30, Terhune was arrested for possession of methamphetamine and possession of drug paraphernalia. On December 1, DHS removed SM, TM, and JT from

Terhune's custody. At the time of removal, Charles Moody was the alleged putative father of SM and was incarcerated, Cesar Valencia was the alleged putative father of TM and was incarcerated, and Chacon was the alleged putative father of JT. Chacon was not living with Terhune at the time of the children's removal.

DHS filed a petition for emergency custody and dependency-neglect on December 5. Regarding Chacon, the petition states that he is JT's putative father, that Chacon was recently paroled from the Arkansas Department of Correction (ADC), and that his whereabouts were unknown. An ex parte order, entered December 5, does not mention Chacon. Thereafter, DHS filed a notice of custody proceeding pursuant to the Indian Child Welfare Act of 1978, 25 U.S.C.A. §§ 1901 et seq. (Westlaw) (ICWA),[1] stating that Chacon is the putative father of JT. But neither the subsequently filed probable-cause order nor the notice of intervention by the Cherokee Nation mentions Chacon. Although Chacon was named in a notice to putative parents filed by DHS on January 17, 2017 (instructing the three putative fathers on the methods of establishing paternity), the next seven pleadings filed by DHS—the March 2017 adjudication order, the July 2017 review order, the October 2017 review order,[2] the January 2018 permanency-planning order, the May 2018 fifteen-month-review order, the June 2018 order correcting style, and the October 2018 review order—did not list Chacon as a party or even mention him.

---

[1]DHS filed this notice after Terhune alleged that SM, TM, and JT are members of, or are eligible for membership in, the Cherokee Nation of Oklahoma on the basis of her enrollment. In its termination order, the circuit court found that the ICWA applies. Chacon's appeal does not challenge this finding.

[2]The October 2017 review order required DHS to "make referrals for genetic testing for all the putative fathers named in this case." On December 12, 2017, a LabCorp DNA report concluded that the probability of Chacon's being JT's father is 99.99%.

On November 15, 2018, nearly a year after a Chacon's DNA test results were released, the circuit court entered an order that found he is JT's father and that joined him as a defendant. Thereafter, the January 2019 permanency-planning order listed Chacon as a party to the case; however, it merely stated that he was incarcerated. The February and May 2019 review orders listed Chacon as a party, but the only other reference to Chacon in these orders is that he was not present at the review hearings. In the May 2019 review order, the court changed the goal of the case to termination and adoption, and a termination-of-parental-rights hearing was scheduled.

DHS filed a petition for termination of parental rights on May 14. With regard to Chacon, DHS alleged that the failure-to-remedy, the other-factors, the sentenced-to-prison-for-a-substantial-period, and the aggravated-circumstances grounds supported termination and that termination was in JT's best interest. Three months later, on July 17, an order appointing counsel for Chacon was entered along with an order directing the ADC to transport Chacon to the termination hearing.

The first hearings Chacon attended in this case were the termination hearings held on August 1 and August 6. Chacon testified that he was incarcerated when JT was born but was released on parole before Terhune lost custody of her children in December 2016. He said that he was reincarcerated in February 2017 and has remained so the duration of this case. Chacon stated that he expects to be released within a few months and that he is eligible for parole in 2021.

Chacon said that while incarcerated, he never received any paperwork (case plans or orders) or contacts from DHS in this case. He stated that in October 2017, he was given a DNA test but that he never learned the results of the test and did not receive paperwork showing the results of the test. He said that DHS did not contact his parents or his sister, who had visits with JT when Terhune had custody and who provided diapers to Terhune for JT. Chacon testified that

after Terhune lost custody of JT, Chacon did not know what was going on with the case or who to contact at DHS about JT. Chacon said he thought it was not fair for the court to terminate his parental rights and for DHS to allege that he had not completed the services listed in the case plan because he was never given a case plan or a chance to reunify with JT. Chacon testified that he has seen JT one time and has had three to five phone calls with him.

DHS caseworker Bailey Murray was assigned to this case on October 1, 2018. She testified that she is the fifth caseworker assigned to the case and that her focus was reunifying the children with Terhune. She said that the initial case plan was prepared on January 17, 2017, and she assumed the prior caseworkers had sent it to Chacon, although she admitted she had no proof that he received it. She testified that she did not send Chacon the DNA results or any other paperwork including revised case plans, notices, or court orders. She said that she did not know why the May 2018 case plan did not include Chacon despite the DNA test results confirming he is JT's father. She said she did not contact Chacon or his family. She stated that she did not inquire about Chacon's family members for relative placement, although she conceded it was her duty to do so. And she stated that she did not know that Terhune was taking JT to visit Chacon's parents and sister or that JT had half siblings. Murray nonetheless testified that Chacon was not an appropriate placement because he is incarcerated, there is no bond between JT and Chacon, and JT is adoptable.

Renee Gann, the Cherokee Nation representative, testified that she first learned in 2019 that Chacon was incarcerated, that she did not make an independent search for Chacon in prison, and that she typically relies on DHS to do that. She stated that DHS has made active efforts to reunify Chacon with JT; however, she agreed that DHS's failure to send him the case plan was not an active effort. Gann also testified that Chacon's parents should have been considered for

relative placement. Gann nevertheless recommended termination of Chacon's parental rights because he had a duty to reach out to DHS to learn what to do and did not do so, he failed to complete any prison programs, he was still in prison, and if he was released he would still have to secure stable housing and employment.

Litzy Chacon, Chacon's sister, testified that she and her parents had visited with JT before DHS removed him from Terhune's custody and that they would like placement of him. She stated that she and her parents have a close relationship with Chacon's other two children (JT's half siblings) who live with their mother.

In closing arguments, Chacon's attorney argued:

> [Chacon] has been incarcerated this whole time not knowing that he was in fact determined by this Court to be the legal father of [JT], and he's received nothing as far as a case plan or other court orders that the case worker has testified to here today. . . .[T]he evidence and testimony before the court [have] just been a complete injustice as to [Chacon's] constitutional due[-]process rights for this court to go forward on the petition and grant the termination. . . . It's a miscarriage of justice that the Cherokee Nation representative and any of the DHS case workers never sent Mr. Chacon anything on this case. . . . [He] had no actual knowledge of what was going on in these proceedings. . . . So in addition to what I believe are multiple examples of depravation of his basic due[-]process rights to terminate his parental rights of [JT] . . . it's clear that [DHS] had no intention of really doing anything more than naming Mr. Chacon in pleadings in their attempt to follow this Court's order that DNA testing be done. . . . [T]he infringements on his constitutional due[-]process rights cannot be overlooked or outweighed and I would argue that that is paramount to severing parent's rights in these cases .

The circuit court took the case under advisement. Thereafter, the court held another hearing to issue its oral findings. It found that DHS had met its burden of proving the ground that Chacon has been sentenced to prison for a substantial portion of JT's life, Arkansas Code Annotated section 9-27-341(b)(3)(B)(viii) (Supp. 2019), on the basis of the sentencing orders entered against Chacon and the pattern of behavior demonstrated in the sentencing orders, the evidence that Chacon had been incarcerated for more than two years, and the evidence that Chacon had seen

JT only once and did not know his date of birth. The court further found that termination was in JT's best interest. The court did not address or rule on Chacon's due-process argument.

In response to the court's oral ruling, Chacon stated, "[Y]ou all just want to take my son away from me and I didn't get no paperwork," and "[T]hese folks are trying to take my son and they haven't even [given] me a chance to be up there for them." Despite his protest, no request for a ruling on the constitutional argument was made, and no ruling was issued on that argument. The circuit court subsequently entered an order on October 10 terminating Chacon's parental rights to JT.[3] The order is silent on Chacon's due-process argument. This appealed followed.

We review termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Sills v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 9, at 7, 538 S.W.3d 249, 254. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*, 538 S.W.3d at 254. In determining whether a finding is clearly erroneous, we have noted that in matters involving the welfare of young children, we will give great weight to the circuit court's personal observations. *Id.*, 538 S.W.3d at 254.

The termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Id.*, 538 S.W.3d at 254. As a result, there is a heavy burden placed on the party seeking to terminate the relationship. *Id.*, 538 S.W.3d at 254. The termination of parental rights is a two-step process that requires the circuit court to find that the parent is unfit and that termination is in the best interest of the child. *Id.*, 538 S.W.3d at 254. The first step requires proof

---

[3]The order also terminated the parental rights of Terhune to all three children, the parental rights of Moody to SM, and the parental rights of Valencia to TM. Terhune, Moody, and Valencia are not parties to this appeal.

6

of one or more of the statutory grounds for termination. Ark. Code Ann. § 9-27-341(b)(3)(B). The second step requires consideration of whether the termination of parental rights is in the child's best interest. Ark. Code Ann. § 9-27-341(b)(3)(A).

Chacon does not challenge the circuit court's grounds or best-interest findings. Rather, he argues that it was erroneous for the circuit court to proceed with the termination petition because he is an incarcerated parent who was "completely ignored" by DHS in this case. Despite knowing his whereabouts and that he was JT's father in November 2017, he was not made a party until a year later. DHS never sent him any paperwork in this case, including the DNA results, case plans, court notices, or orders. He argues that he was not given the opportunity to attend any hearings in this case except the termination hearings. As a result, Chacon contends that DHS failed to permit him to have any meaningful participation in the case, thereby depriving him of his constitutional due-process rights.

The procedural history outlined above raises obvious questions about DHS's effort—or lack thereof—to notify Chacon of the proceedings and to reunify him with JT. Nonetheless, we are unable to reach the merits of Chacon's due-process argument because he failed to obtain a ruling on it by the circuit court.

It is well settled that to preserve arguments for appeal, even constitutional ones, the appellant must obtain a ruling below. *City of Barling v. Fort Chaffee Redevelopment Auth.*, 347 Ark. 105, 123, 60 S.W.3d 443, 454 (2001) (citing *Barclay v. First Paris Holding Co.*, 344 Ark. 711, 42 S.W.3d 496 (2001); *Wilson v. Neal*, 332 Ark. 148, 964 S.W.2d 199 (1998)); *see also Ark. Wildlife Fed'n v. Ark. Soil & Water Conservation Comm'n*, 366 Ark. 50, 61, 233 S.W.3d 615, 622 (2006); *Carson v. Cty. of Drew*, 354 Ark. 621, 629–30, 128 S.W.3d 423, 429 (2003); *Doe v. Baum*, 348 Ark. 259, 277, 72

S.W.3d 476, 486 (2002). Because Chacon did not obtain a ruling on his due-process argument, it is not preserved for appeal. Accordingly, we must affirm.

Affirmed.

HARRISON, J., agrees.

VIRDEN, J., concurs.

**BART F. VIRDEN, Judge, concurring**.  For the reasons set forth in my concurrence in *Fox v. Arkansas Department of Human Services*, 2020 Ark. App. 13, 592 S.W.3d 260, I also concur in the instant case and hope the legislature sees fit in the future to address the issue.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Office of Chief Counsel, for appellee.

*Kimberly Boling Bibb*, attorney ad litem for minor children.