Cite as 2021 Ark. App. 494

# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CV-21-205

| | |
|---|---|
| CHRISTOPHER SCOTT<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | **Opinion Delivered** December 8, 2021<br><br>APPEAL FROM THE SALINE COUNTY CIRCUIT COURT<br>[NO. 63JV-19-274]<br><br><br>HONORABLE ROBERT HERZFELD, JUDGE<br><br>AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Appellant Christopher Scott appeals from an order of the Saline County Circuit Court terminating his parental rights to his son, S.S. Scott does not challenge either the sufficiency of the evidence supporting the statutory grounds for termination or the court's best-interest determination; instead, he contends that the circuit court's order should be reversed because he was denied his right to counsel at the time of the termination hearing. We affirm.

### I. *Factual and Procedural Background*

Because Scott does not challenge either the statutory grounds or the court's best-interest findings, we provide only a short recitation of the background facts. Scott and Brittany Toland are the parents of S.S.[1] In September 2019, the Arkansas Department of

---

[1]Scott was adjudicated S.S.'s biological father by the circuit court in its probable-cause order.

Human Services (DHS) removed S.S. from Scott and Toland's home and filed a petition for dependency-neglect alleging drug usage and environmental neglect. Of significance to the issues presented in this appeal, the circuit court entered an ex parte order on September 24. In this order, the court advised Scott that he had "a right to an attorney at each stage of the proceedings" and informed him that "[l]egal assistance may be obtained by retaining private counsel, contacting Legal Services . . . , or, if indigent, requesting the court to appoint legal counsel."

Thereafter, the circuit court entered orders reflecting its findings from the probable-cause, adjudication,[2] and review hearings. In each of these orders, the court listed Scott as present and proceeding pro se. Concerning Scott and his compliance with the case plan, the court noted that he continued to test positive for methamphetamine and was only minimally complying. The court, however, continued the goal of reunification until the permanency-planning hearing, at which time the court changed the goal of the case to adoption.[3] Consequently, DHS filed a petition for termination of parental rights,[4] and the circuit court scheduled a hearing on the petition.

Scott was present at the termination hearing, and the court addressed the matter of his legal representation. The court noted that Scott previously had represented himself and

---

[2]In the adjudication order, the court adjudicated S.S. dependent–neglected on the basis of parental unfitness and environmental neglect.

[3]Scott was not present at the permanency-planning hearing.

[4]The grounds alleged in the petition were twelve months failure to remedy; willful failure to provide significant material support; subsequent other issues; and aggravated circumstances in that there was little likelihood that services to the family would result in successful reunification.

asked whether he intended to continue to do so. Initially, Scott replied that it was his intent to continue to represent himself. He then began to equivocate after Toland's attorney raised the issue of appointment of counsel for Scott. Scott then told the court, "You told me I had to represent myself. I didn't know I could have an attorney today." In response, the court informed Scott, "You can hire your own attorney. If you're indigent, you can have one appointed to represent you, or you can represent yourself as you've been doing in the past." Given these three options, Scott answered that he would like to have an attorney and could afford to hire one. When pressed by the court regarding his "ability and the wherewithal to hire [his] own attorney," Scott assured the court that he could.

Given Scott's desire to hire counsel and his assurance that he had the ability to do so, the court agreed to reset the hearing but warned Scott that he was "committed to either representing [himself] or going forward with whatever attorney [he] hire[d]." The court advised Scott that if he did not have counsel, he would have to represent himself. Scott indicated that he understood. Scott acknowledged the court's admonition, and the court reset the hearing. Scott agreed to be ready on that date.[5]

On January 14, 2021, the court resumed the termination proceedings with a different judge presiding.[6] Scott appeared without counsel, and the court asked Scott about his

---

[5]The order establishing the continuance specifically reflected that Scott "appeared and indicated he desires the opportunity to hire private counsel to represent him at the termination of parental rights hearing." It also provided that the termination hearing "shall take place . . . regardless of whether the father hires private counsel. If he does not hire counsel, the father shall represent himself at the hearing, as he stated on the record that he has the ability, funding, and desire to do so. No further continuances will be granted."

[6]Judge Gary Arnold had presided over the proceedings up until this point; Judge Robert Herzfeld actually presided over the termination hearing.

3

attempts to hire counsel. Scott replied that he had encountered difficulty finding an attorney over the Christmas and New Year holidays and asked the court for another thirty days. The court denied Scott's request for a continuance and proceeded with the termination hearing. After hearing all the testimony, the court ruled from the bench that DHS had proved each of the statutory grounds for termination alleged in the petition and that termination would be in S.S.'s best interest.

On February 23, Scott filed a pro se motion to set aside the termination order. Scott asserted that he was not asked if he was indigent for purposes of obtaining a court-appointed attorney and was not appointed one for the termination hearing. He alleged that the court "should have evaluated me for indigency and appointed an attorney for me in the case that I could not hire an attorney. I wanted a lawyer and tried to hire one with money from family. That fell through." Instead, he complained, the court proceeded with the termination hearing without determining whether he was eligible for appointed counsel. Scott asserted that he had no income and was therefore indigent; thus, he should have been appointed counsel.[7] On February 24, the court entered its order terminating Scott's parental rights, and Scott filed a timely notice of appeal.

## II. *Discussion*

In dependency-neglect proceedings, a parent enjoys two separate and distinct rights to counsel. First, a parent may have a due-process right to counsel. The United States Supreme Court has found that a parent's due-process right to counsel in dependency

---

[7]The circuit court did not rule on Scott's pro se motion.

proceedings is not absolute but must be determined case by case on the basis of fundamental fairness—(1) when the case presents an especially troublesome point of law and (2) when presence of counsel would have made a determinative difference. *See Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18 (1981). Second, a parent may have a statutory right to counsel conferred by the State. Unlike the due-process right to counsel, which arises only if the circumstances of each particular case indicate that fundamental fairness requires the appointment of counsel, this State-conferred statutory right is governed by the certain defined circumstances contained within the statute. *Buck v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 258, at 5–6, 548 S.W.3d 231, 234–35.

For his first argument on appeal, Scott contends that his due-process right to counsel was violated by the circuit court's decision. Scott failed, however, to raise a due-process argument before the circuit court, and as such, this aspect of his argument is not preserved for appeal. *See Lancaster v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 557, at 11, 566 S.W.3d 484, 491 (father argued on appeal that the circuit court erred in failing to appoint counsel in termination proceeding, but because father did not raise due-process-violation argument to the circuit court, the point was not preserved for appeal); *Hunter v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 500, at 5, 562 S.W.3d 883, 886 (father failed to raise due-process argument regarding appointment of counsel to the circuit court; this court held that "we will not consider issues raised for the first time on appeal, even constitutional ones").

In his second argument, however, Scott asserts that he was deprived of his State-conferred statutory right to counsel. Arkansas has conferred a right to counsel on parents in

5

termination proceedings. Arkansas Code Annotated section 9-27-316(h) (Supp. 2021) provides:

(h)(1)(A) All parents and custodians have a right to counsel in all dependency-neglect proceedings.

(B) In all dependency-neglect proceedings that set out to remove legal custody from a parent or custodian, the parent or custodian from whom custody was removed shall have the right to be appointed counsel, and the court shall appoint counsel if the court makes a finding that the parent or custodian from whom custody was removed is indigent and counsel is requested by the parent or custodian.

(C)(i) Parents and custodians shall be advised in the dependency-neglect petition or the ex parte emergency order, whichever is sooner, and at the first appearance before the court, of the right to counsel and the right to appointed counsel, if eligible.

. . . .

(D) All parents shall have the right to be appointed counsel in termination of parental rights hearings, and the court shall appoint counsel *if the court makes a finding that the parent is indigent and counsel is requested by the parent.*

. . . .

(2) If at the permanency planning hearing or at any time the court establishes the goal of adoption and counsel has not yet been appointed for a parent, the court shall appoint counsel to represent the parent as provided by subdivision (h)(1)(D).

(Emphasis added.)

Scott contends that the court failed on at least two occasions to advise him of his right to be appointed counsel, arguing that "there was no attempt at either [the December or the January] hearing to see if [he] was indigent, nor to advise him he had a right to appointed counsel, in clear violation of . . . section 9-27-316 and therefore the termination of parental rights should be reversed."

6

We begin by noting that Scott is conflating two separate concepts—the failure to advise one of one's right to counsel and the failure to determine indigency—into one argument. Scott had a statutory right to be advised of his right to counsel. *See* Ark. Code Ann. § 9-27-316(h)(1)(C)(i). The court fulfilled its statutory obligation to advise Scott of his right to counsel in the ex parte order for emergency custody. In that order, the court expressly advised Scott that "[t]he parents or custodian from whom custody was removed have a right to an attorney at each stage of the proceedings" and informed them that "legal assistance may be obtained by retaining private counsel, contacting Legal Services . . . , or, if indigent, requesting the court to appoint legal counsel."[8] In addition, at the initial termination hearing, the court expressly advised Scott that he could hire an attorney, he could have an attorney appointed to represent him if he were indigent, or he could represent himself. Thus, we find no merit in the argument that the court failed to advise Scott of his right to have counsel appointed for him.

We also find no merit in the argument that the court failed to determine Scott's indigency status for purposes of parent counsel appointment. Without citation to authority, Scott argues that the circuit court was required to inquire into his indigency status. We disagree.

---

[8]The statute also requires the court to advise parents of the right to counsel "at the first appearance before the court." Scott's first appearance was at the probable-cause hearing; however, Scott did not designate the transcript of that hearing for inclusion in this record. Accordingly we do not have a record of those proceedings from which to determine whether the court advised him of his right to counsel at that time. Scott does not argue in his brief that he was not so advised, however, so we do not address the matter further.

Under section 9–27–316 (h)(1)(D), all parents are afforded the right to appointed counsel in termination-of-parental-rights hearings upon the satisfaction of two conditions: (1) a finding of indigency by the court and (2) a request for appointment of counsel by the parent. Scott focuses on the first condition, asserting that the court failed to inquire or make a finding of his indigency. Even if we assume this to be true, however, his argument fails because at no time in the record did Scott ever represent to the court that he was indigent or request the appointment of parent counsel.

At the first setting for the termination hearing, Scott did not advise the court that he was indigent nor did he request that counsel be appointed for him. To the contrary, he repeatedly reassured the court that he could "go out and get" an attorney, that he had "the ability and the wherewithal to hire [his] own attorney," and that he was "certain [he had] the financial ability to hire [his] own attorney." Likewise, at the second hearing, Scott did not claim to be indigent or ask for counsel to be appointed but only asked the court for more time to hire an attorney. Thus, it is clear he never asked to be declared indigent or requested the appointment of counsel.

We have previously addressed a parent's right to appointment of counsel in termination proceedings. In *Basham v. Arkansas Department of Human Services*, 2015 Ark. App. 243, 459 S.W.3d 824, we reversed a termination of parental rights when the mother expressly advised the court that she was incarcerated, asserted indigency, and requested the appointment of counsel, but the court denied her request and terminated her rights without the benefit of counsel. In *Hernandez v. Arkansas Department of Human Services*, 2019 Ark. App. 449, at 20, 588 S.W.3d 102, 114, we reached a different result largely because the

parent never requested the appointment of counsel. ("Pursuant to [section 9-27-316(h)(2)(B)], Alfredo also had to request that counsel be appointed for him, and there is no indication that he ever requested that counsel be appointed to represent him at the hearings he attended.").

In *Basham* the mother expressly asserted her indigency, whereas Scott never asserted indigency. Instead, he repeatedly informed the court that he could afford to hire an attorney. Moreover, as in *Hernandez*, Scott never asked the court to appoint him counsel. We conclude that *Hernandez* is persuasive, controlling authority as applied to the facts presented in this appeal. We therefore affirm the termination of Scott's parental rights.

Affirmed.

ABRAMSON and BARRETT, JJ., agree.

*Eden Law Firm*, by: *Kimberly Eden*, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.